ST. LOUIS & S. F. R. CO. v. HADLEY, Atty. Gen., et al. (and 17 other cases).

(Circuit Court, W. D. Missouri, W. D.  June 17, 1907)

No. 2,988.

1. EQUITY—PLEADING—SUPPLEMENTAL BILL.

Where suits by railroad companies to restrain the enforcement of a state statute fixing freight rates, on the ground that it was confiscatory and unconstitutional, were pending in a federal court at the time of the enactment of a second statute fixing passenger rates, the question of the constitutionality of the second act may properly be raised and determined in the pending suits on supplemental bills.

2. COURTS—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

Where bills were tendered for filing in a federal court pursuant to notice previously given, and while leave was not then granted because of the absence of defendants, restraining orders were issued by the court based thereon, the court obtained jurisdiction over the subject-matter of the suits from such time, which was not ousted by the institution of suits in a state court subsequently, but before the formal filing of the bills.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1346, 1347.]

3. SAME—JURISDICTION OF FEDERAL COURTS—SUITS TO ENJOIN ENFORCEMENT OF STATE STATUTE.

A federal court of equity has jurisdiction of suits to determine the constitutionality of state statutes regulating railroad rates which are at-

tacked on the ground that the rates fixed are unremunerative to the railroad companies, and that their effect, if enforced, will be to deprive the companies affected of their property without due process of law, and such suits are appropriate means for determining the question.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 820, 823.

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

**4. CARRIERS—STATUTE REGULATING RAILROAD RATES—PRELIMINARY INJUNCTION TO RESTRAIN ENFORCEMENT.**

Preliminary injunctions to restrain the putting into effect of a state statute fixing maximum rates of passenger fares on railroads denied to await a demonstration of the reasonableness or unreasonableness of such rates by actual trial for a reasonable length of time.

## In Equity.

Frank Hagerman, for complainants.

Herbert S. Hadley, John Kennish, Sanford B. Ladd, and F. W. Lehmann, for defendants.

McPHERSON, District Judge. These cases were argued on Saturday and taken under advisement until this time. The situation is such that I must decide the questions to-day. Limited as the time has been, I have an abiding conviction of what should be done, even if the reasons therefor may not be stated with the fullness that the importance of the matters requires. I have been much aided by the arguments, which were strong, eloquent, and powerful, by counsel representing both sides, and, as it seems to me, every phase of the questions was so illuminated by the arguments that all possible questions are at an end of debate. The real question here is: Has this court jurisdiction over the passenger fare law of 1907 of the Missouri Legislature, by which it is declared that the legal fare be two cents per mile? A question connected with that is whether the bills tendered are supplemental bills to those filed in the 18 cases two years ago to enjoin the enforcement of the freight tariff law of 1905 now pending before the master.

A supplemental bill usually is where there has been some change in the rights or status of the parties which must be carried forward by a supplemental bill, and usually, when a supplemental bill is thus allowed, matters can be brought in which could have been covered by an amendment to the original bill. These discussions as to supplemental bills, as well as to other bills, are exceedingly technical. It seems to me that the test is, not so much in the way a pleading is styled, as what the allegations of the pleading are. Formerly, discussions as to various bills in equity gave rise to great delay; the results being that years and years would elapse before a chancery case could be concluded. Looking back at those old discussions, it now seems to have been a folly to thus waste the time and energies of the judges and of counsel in determining such technical questions. Such must have been the belief of the Supreme Court when a code of rules in equity was established; the purpose no doubt being to get rid of the old technicalities which served no useful purpose. By the adop-

tion of the rules in equity, we have a system of fact pleading, covering almost every phase of equity pleading and practice; and it is only when some question of practice is not covered by the rules that we go back to see what the practice of the High Court of Chancery in England was, and then not as positive rules, but as furnishing just analogies. Rule 90 thus providing was adopted in the year 1842, and the Supreme Court has decided that, when we go to the English Chancery practice, we must take the practice as it existed in England in 1842, when this rule was adopted. By rule 57 it will be seen that the supplemental bill is allowed when any material event has happened after the filing of the original bill. In 1905, the Legislature of Missouri enacted a maximum freight tariff statute as to several commodities. The railways contested the validity of that statute in the 18 actions above referred to, and these actions are still pending. By the act of 1907 the Legislature declared that all railways should charge but two cents per mile per passenger. It seems to me that this is an event happening since the institution of the original suits, and an event that is germane to the original controverted questions. But I do not deem it of much importance to determine whether the pleadings tendered for filing are supplemental bills, or whether they are original bills.

On Tuesday, the 11th inst., the complainants gave notice of filing these bills on Friday, the 14th inst. On Thursday, the 13th inst., the railway companies asked leave to file them. Solely out of courtesy to the Attorney General, who was not then present, this was refused, but the court on its own motion issued restraining orders to keep the matters in statu quo. At the time fixed, Friday the 14th inst., the matter was again delayed for a day at the request of the Attorney General; he still being absent. And on that day bills were filed in the state courts at Saint Louis and Kansas City; the purpose being, as it is said, to bring about the enforcement of this statute in question. And the argument now is that, as these cases were filed in the state courts on Friday the 14th inst., the day before the arguments were had in this court, the same subject-matter was pending in the state courts, and that the state courts would take jurisdiction to the exclusion of this court; the cases being there first pending. But the above statement of facts shows that the cases were pending in this court from Tuesday, the 11th inst., and that orders were made on Thursday, the 13th inst., the day before the cases were lodged in the state courts. If these matters could not be covered by supplemental, they could be covered by original, bills, and they were presented prior to the institution of the cases in the state courts. It is not material whether these supplemental bills, so called, are full and complete as original bills. Defects could be cured upon exceptions or demurrers, or by complainants on their own motion before the filing of an answer. Nor is it material whether these pleadings are filed in the original cases or separately docketed, because, if separately docketed, they will at once for trial purposes be consolidated with the old cases pursuant to section 921 of the Revised Statutes [U. S. Comp. St. 1901, p. 685]. And whether the contention of counsel for the state officers be technically correct or not, the contention is without substantial merit as to the

rights of the parties. These pleadings should be filed and regarded as having been filed on Tuesday, the 11th inst.

The fixing of rates by the Legislature is presumptively correct, and the railway companies have the burden of proof of showing that the statute is not remunerative. That the fixing of rates is a legislative act, all agree; but that such rates must be reasonably remunerative cannot longer be discussed. The railways are entitled to cost and a reasonable profit, and no fair-minded man disputes it. How to arrive at the cost and a reasonable profit is a most difficult problem. But, if the statute is challenged, it must be ascertained, and this ascertainment can only be by judicial proceedings, and must be determined by the courts, and ultimately by the Supreme Court of the United States. No skill of the draughtsman by the use of words or phrasing can take this question from the courts. It can never be settled in a criminal case by arresting ticket agents and conductors. The Supreme Court in the end must have the evidence with the right to make the ultimate findings of fact. There is but one orderly and seemly way, and that is in equity with the right of appeal to the Supreme Court, as has been said by that court over and over again. All contentions that the courts of the state can decide these questions as well as can the United States courts is not a question for argument, because it is a question of jurisdiction, and in my judgment in these cases this court has jurisdiction, and, having jurisdiction, the jurisdiction should be exercised.

There seems to be much feeling in the minds of many as to where these cases should be adjudicated, but why the feeling I do not understand. And yet I recall the historical facts that at various times since the organization of this government the feeling has run high as to whether the federal or state courts should adjudicate matters of importance to the public. No one doubts that the states have a right to manage their own local affairs, and to have matters growing out of their own local affairs determined by their own courts. But it is too late to seriously complain, because the United States courts take and exercise jurisdiction under the constitutional provision providing for the courts, and the enactments thereunder. The United States courts, regardless of the citizenship of the parties, will take and exercise jurisdiction in actions of a civil nature when the provision of the United States Constitution is invoked, as has been done in this case. The Constitution provides for this, and Congress has provided the procedure. The commerce clause of the United States Constitution has been invoked, as is the fourteenth amendment. These are national questions, and the Supreme Court will hold the scales of justice with the evidence before it, and why there should be any excitement or feeling about this is beyond my comprehension. I do not know, and of course do not state, that the state Legislature has wronged these railways, because that is the question to be decided when deciding the merits of the case. The railways say that they are being wronged, and they should have a hearing, and the hearing should be on the evidence, and that evidence carried in the record to the Supreme Court. And if upon the evidence the railways are being compelled to transact business at a loss, no one ought to doubt but that the Supreme Court will hold the statute void. If the rates fixed are remunerative, no

one ought to doubt but that the statute will be upheld. It is too late to talk about the alleged wrongs of the Supreme Court declaring statutes void. That question was fought out 100 years ago, and from the organization of the Supreme Court, down to the year 1888, being the period covering the first 100 years of the United States Supreme Court, that court held 20 United States statutes void. During the same period, that court held 181 state statutes void, of which 14 were Missouri Statutes. See Appendix to volume 131, U. S. Reports. How many statutes have since been declared void by that court I have not taken the time to ascertain. Some of the statutes thus declared void were railway rate statutes enacted by the states.

These questions are of the greatest importance. There are many complications arising. Much is to be considered besides the mere rates or fares. There must be equality of rates—the treatment and charging of all alike. No rebates, no discriminations must be allowed. Safety of the public, including passengers and employés, must be considered. And as of much importance as any other question, if not the greatest of all, is the question of efficient service. Rapid and prompt delivery of freight must be had. Fast passenger trains, with but few stops, for passengers going a considerable distance, are demanded. Local trains for local passengers are required. To have such efficient service, reasonable compensation must be paid. All these questions are involved in the fixing of rates. Between the cities of St. Louis and St. Joseph, one line of railway is wholly within the state, while another and competing line a part of the distance is within the state of Kansas. A like situation exists between Kansas City and St. Joseph, and another like situation exists between Kansas City and Joplin. Possibly there are other like situations. In the case of Hanley v. Railroad, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, the Supreme Court decided that a railway connecting two points within a state, and doing business between the two points, but with a line outside of the state a part of the distance, was engaged in interstate commerce controllable only by enactments of Congress. What about the Missouri statute fixing rates over the one line wholly within the state, as against a competing line a part of the distance outside of the state? I do not intimate the conclusion, but that there is a question cannot be doubted. And, if the statute is void in part, is it separable, leaving the valid parts to stand with the void parts eliminated? I simply mention these questions to show the gravity and importance of these cases, without in the slightest degree intimating the conclusion, often discussed by men of great ability, but upon which as yet there has been no conclusion reached, so far as I know, by any of the courts.

It is urged with much plausibility that by reason of the case of Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, that, because penalties are affixed to the statute of 1907, the criminal courts of the state only can take jurisdiction. I do not stop to review the various Missouri statutes upon the subject of both passengers and freight, all of which must be considered as in pari materia; but it is sufficient to say that the inflicting of penalties is not the only remedy. The Attorney General and railroad commissioners still have much to do with the enforcement of these statutes which the railways contend

are void in part. These matters were considered, and a conclusion reached adversely to the contention of the officers of Missouri, by the Supreme Court of the United States, sustaining Judge Philips when presiding in this court, and reversing the Supreme Court of Missouri. Railroad v. Missouri R. Commissioners, 183 U. S. 53, 22 Sup. Ct. 18, 46 L. Ed. 78. As I understand, in the original 18 cases now pending in this court, the question was and is whether all the earnings in the aggregate are remunerative. That theory being, I suppose, by reason of the case of Smythe v. Ames (decided by the Supreme Court), 18 Sup. Ct. 418, 169 U. S. 466, 42 L. Ed. 819, and that question is still present under the General Statutes of Missouri, the Statutes of 1905, and the Statute of 1907 in question. The time is not far distant when the question will be raised, and possibly in these very cases, as to whether the statutes can stand, if some rates are too high, if the rates within the state in the aggregate are remunerative. The question will arise whether one person can have less than reasonable rates, and another be compelled to pay more than reasonable rates. Will it be a sufficient answer to say that in the aggregate the rates are remunerative? Or is that a question only between the individual and the railway company? Upon this question I intimate no ruling, but the importance of the question cannot be overestimated.

These cases will be set down for hearing. The orders heretofore made will stand, except as now modified. The two-cent passenger fare statute should be put in force, and kept in force for some months, with the rights of the railways later on to renew their motions to enjoin the enforcement of the statute. One class of people claim that with the two-cent fare travel will so increase as to make it remunerative. Others deny this. The Wisconsin commission but lately declared, after months of investigation, that in that state a two-cent passenger fare would be confiscatory. Gov. Hughes, by a recent veto message, so declared as against an enactment providing for the two-cent fare in the populous state of New York. It may be that what will be reasonable rates in parts of Missouri on one line will be unreasonable in another part of Missouri on another line. How can these questions be determined? Is it not at present all speculation and guesswork? Of what value will be the testimony of an ordinary business man testifying by way of opinion? And of what value will be the testimony of railway experts giving opinion and illustrating his opinions by the use of many figures? Experience over a reasonable period of time ought to, and no doubt will, settle these questions, at least for the time being, although what may be a reasonable remuneration one year may be unremunerative five years hence. The Supreme Court of the United States, in Smythe v. Ames, referred to, took care of that question by keeping it open, with the right to open up the case from time to time as circumstances required.

Therefore the orders will be that this court retains jurisdiction of these cases, regardless of whether the pleadings tendered are considered as supplemental bills or original bills, and no order will be made for some months with reference to the two-cent fare statute, leaving it for the time being operative and as though in full force.