## BANTON, DISTRICT ATTORNEY, v. BELT LINE RAILWAY CORP.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 465.   Argued March 11, 12, 1925.—Decided May 25, 1925.

1. Where an order of the New York Public Service Commission establishing joint street railway routes with a maximum joint fare, long in force, became confiscatory as to one of the companies concerned and remained obligatory under the state law notwithstanding an application for relief pending before the commission on rehearing,—*held* that the company was not bound to await final action by the commission and to serve in the meantime without just compensation before suing in the federal court for an injunction.   P. 415.

2. The right of a street railway company to enjoin enforcement of such an order—made by a State commission having power to establish equal and non-confiscatory rates—is not affected by the facts that another company, whose railway may benefit from the injunction through diversions of traffic from competitors, owns all the stock of the plaintiff and does not itself seek to have the order enjoined.   P. 417.

3. Mere acceptance and putting into effect, by a street railway company, of an order of the New York Public Service Commission fixing a rate obligatory by the state law and which presumably was valid at the time, was not an agreement by that company to abide by the rate should it subsequently become confiscatory; nor is such consent to be imputed to a successor corporation because it was incorporated and acquired the first company's property while the order was in effect, where the acquisition was through foreclosure of a mortgage antedating the order, and under which the franchises of the first company passed unimpaired to the second, and where there is nothing in its certificate of incorporation or in the laws under which it was incorporated imposing on the second company an obligation to continue to serve for the fare fixed by the order.   P. 417.

4. The power of a State to require street railways to provide reasonably adequate facilities and services even though compliance may be attended by some pecuniary disadvantage, cannot justify an order enabling passengers, by transferring from one line to

another, to ride on both for a fare so low as to deprive a company
of any return on the value of the property used by it to perform
the service; the State may not, under guise of regulation, compel
the use and operation of a company's property for the public
convenience without just compensation. P. 419.

5. The evidence in this case justifies the conclusion that resumption
by the plaintiff street railway company of transfer business under
an order establishing joint routes and a joint 5c fare, would re-
quire additional operating expenses in excess of the resulting in-
crease of revenue, and that the company's fair share of the joint
rate would be substantially less than the operating expenses and
taxes justly chargeable to that business—hence the rate is con-
fiscatory. P. 420.

6. In determining whether a rate fixed for transfer passengers con-
stituting only part of the traffic of a street railway line is confisca-
tory, the cost of the transfer business is not the amount by which
total operating expenses would be diminished by eliminating, or
increased by adding, the transfer passengers; for those operating
expenses which are incurred on account of all passengers carried
and incapable of allocation to any class, should be attributed to
the transfer passengers in fair proportion with others receiving
like service. P. 421.

7. While a carrier has no constitutional right to the same rate of
return on all its business, the State may not select any class of
traffic for arbitrary control and regulation. P. 421.

8. In a suit to enjoin enforcement of a rate fixed by a competent
state commission, the presumption is that the order was based
on sufficient evidence and the burden is on the plaintiff to estab-
lish its invalidity. P. 422.

9. A commission or other legislative body in its discretion may deter-
mine to be reasonable and just a rate that is substantially higher
than one merely sufficient to justify a judicial finding in a confisca-
tion case that it is high enough to yield a just and reasonable
return on the value of the property used to perform the service
covered by the rate; rates substantially higher than the line
between validity and unconstitutionality properly may be deemed
to be just and reasonable, and not excessive or extortionate. P. 422.

10. A finding by a state commission that a street car rate is, by reason
of changed operating conditions, "unjust, unreasonable, and in-
sufficient to render a fair and reasonable return for the service
furnished," plainly imports that the rate is confiscatory. P. 422.

Affirmed.

APPEAL from a decree of the District Court enjoining enforcement of an order establishing joint street car routes and a maximum joint fare. See 273 Fed. 272.

*Messrs. Howard Thayer Kingsbury* and *M. M. Fertig,* with whom *Messrs. George P. Nicholson* and *George H. Stover* were on the briefs, for appellants.

*Mr. Alfred T. Davison,* for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This suit was commenced December 16, 1920, by appellee to enjoin the enforcement of an order of the New York Public Service Commission, First District, (succeeded by the Transit Commission), made October 29, 1912. The order established joint routes on street railways in New York City and prescribed five cents as the maximum joint fare. Appellee's street railway formed a part of some of such routes. The complaint alleged that the order deprived appellee of any return on the value of its property used to perform the service covered by the joint fare complained of, and violated the due process and equal protection clauses of the Fourteenth Amendment, and prayed injunction against the enforcement of the order in respect of certain lines with which its railroad connected. A temporary injunction was granted by a court of three judges. § 266, Judicial Code. 273 Fed. 272. A master took the evidence and reported that the order was confiscatory. The district court confirmed his findings and entered decree as prayed. Appeal was taken under § 238, Judicial Code.

1. Appellants contend that, when this suit was commenced, the rate making process was not completed, and that the appellee had not exhausted its legal remedies in the state tribunals. The point is without merit. The order complained of had been in force for more than eight

years.   The laws of the State required it to be obeyed, and
prescribed penalties for failure to comply with it.   See
§ 56, Public Service Commission Law, c. 48, Consolidated
Laws, New York.   May 11, 1920, the receiver of the New
York Street Railways Company applied to the commission
to be relieved from the requirements of the order, and,
May 18, appellee joined in that application and prayed
for the elimination of the joint fare between its lines and
the lines of other companies, except those of the Third
Avenue Railway Company and the Forty-second Street,
Manhattanville & St. Nicholas Avenue Railway Company.
May 22, appellee filed with the commission a revised joint
tariff, to take effect June 22, eliminating the joint fare of
five cents.  But on June 18, the commission suspended
this tariff, and so compelled appellee to continue to com-
ply with the order of October 29, 1912.  July 9, the com-
mission found the fare of five cents too low and prescribed
in its stead a joint fare of seven cents, to take effect Sep-
tember 13.  Appellee, on July 23, applied for a rehearing
under § 22 of the Public Service Commission Law.   It
alleged that the joint fare of seven cents would be confisca-
tory; and that the evidence submitted had no reference
to a joint or through rate of seven cents.  August 28, the
receiver also applied for a rehearing.   August 31, the com-
mission granted a rehearing to commence November 5,
and postponed the taking effect of the joint fare of seven
cents until such time as the commission might fix, at or
after the termination of the rehearing.   On November 5,
the rehearing was commenced, and the testimony was
closed November 10.   There has been no determination
of the matter by the commission, and so the order fixing
joint fares at seven cents never took effect.   Neither the
original application nor the petition for rehearing relieved
appellee of the burden of compliance with the order of
October 29, 1912.  No application to the commission for
relief was required by the state law.   None was necessary

as a condition precedent to the suit. See *Prendergast* v.
*N. Y. Tel. Co.,* 262 U. S. 43, 48; *United States* v. *Abilene
& So. Ry. Co.,* 265 U. S 274, 282.  On the point under
consideration, it must be assumed that the joint fare of
five cents was confiscatory as alleged.  The continued en-
forcement of that rate would operate to take appellee's
property without just-compensation and to compel it to,
suffer daily confiscation.  Notwithstanding the matter
was pending on rehearing, the appellee had the right to
sue in the  federal court to enjoin the enforcement of
the rate.  It was not bound to await final action by the
commission and, if the rate was in fact confiscatory, to
serve in the meantime without just compensation.  See
*Pacific Telephone Company* v. *Kuykendall,* 265 U. S. 196,
204; *Oklahoma Gas Company* v. *Russell,* 261 U. S. 290,
293; *Love* v. *Atchison, T. & S. F. Ry. Co.,* 185 Fed. 321,
326.

2. Appellants complain that appellee has not sought
injunction against the operation of the order as to the
lines of the Third Avenue Company,—which owns the
stock of the appellee,—and asserts that a diversion of
traffic from other lines to that company has resulted
from the injunction.  The lines, as to which the order
was enjoined, are relieved by the decree from the obli-
gation of dividing the joint fare of five cents.  If the rates
enjoined are confiscatory, appellee is entitled to relief,
notwithstanding its obedience to the order in respect of
other lines and fares.  It was not bound to attack the pre-
scribed rates as to all the routes.  It is not suggested that
the commission is without power to prescribe equal and
non-confiscatory rates.  The effect of the injunction on
the business of the Third Avenue Company and its com-
petitors is not involved in this suit; nor are they com-
plaining.

3. Appellants insist that the appellee voluntarily as-
sumed the obligation to carry transfer passengers pur-

suant to the order of October 29, 1912 for two cents each; and having been incorporated and having acquired its property subsequent and subject to such order, it is not entitled to complain of the order as an infringement of any constitutional right.

The commission had power to establish through routes and fix joint fares. The law required street railroad corporations to comply with every order made by the commission, and prescribed penalties to enforce such orders. See subd. 3, § 49; § 56, Public Service Commission Law, *supra.* The Central Park, North & East River Railroad Company, appellee's predecessor, accepted the order, and put in effect the prescribed joint fare of five cents. There is no suggestion that it was not bound to do so, or that the order was not then valid and binding on the company. A rate that is just and reasonable when prescribed, subsequently may become too low, unreasonable and confiscatory. See *Bluefield Company* v. *Public Service Commission,* 262 U. S. 679, 693; *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388, 400. That company did not agree to serve for the prescribed joint fare of five cents, and was not bound to do so if the rate was found to be or if thereafter it should become, confiscatory. It did not surrender the protection of the Fourteenth Amendment.

The Central Park Company, many years before the order of October 29, 1912, was made, gave a mortgage on all its property, rights and franchises. November 14, 1912, one Cornell purchased at foreclosure sale. December 24, 1912, under § 9 (now § 96) of the Stock Corporation Law, c. 59, Consolidated Laws, New York, Cornell and others became incorporated as the Belt Line Railway Corporation, the appellee. That corporation through such sale and by virtue of the provisions of § 9 succeeded to " all the rights, privileges and franchises which at the time of such sale belonged to, or were vested in the cor-

poration last owning, the property sold "; and became
" subject to all the provisions, duties and liabilities im-
posed by law on that [the predecessor] corporation."
The franchise of the mortgagor was not destroyed. *People
v. O'Brien,* 111 N. Y. 1, 41, *et seq.* The rights of the mort-
gagee and of the purchasers were inviolable. *People ex
rel. Third Avenue Ry. Co. v. Public Service Commission,*
203 N. Y. 299, 308. There is nothing in appellee's cer-
tificate of incorporation or the laws under which it was
organized that imposes upon it any obligation to continue
to serve for a portion of the joint fare of five cents. The
commission's order constitutes no part of the charter
of appellee; and we find no agreement by appellee, ex-
pressed or implied, to comply with the order. The dis-
trict court rightly held that *Interstate Railway Company
v. Massachusetts,* 207 U. S. 79, does not apply.

4. It is asserted that the transfer order was not confis-
catory, because it was a reasonable service requirement,
and also because the additional expense which would be
involved by a resumption of transfers would not exceed
the additional revenue which would be derived from
transfer passengers.

The order was made under subd. 3, § 49, Public Com-
mission Law, *supra.* Its purpose was to enable a pas-
senger, by making a change from the car of one com-
pany to the car of another, to ride on the lines of both
for a single fare of five cents. The service was not af-
fected by the order. Change of cars remained necessary.
The designation of transfer points and the requirement
that transfer tickets be given and received by carriers
were for the purpose of giving to the passenger the addi-
tional transportation without additional payment. The
amount of the fare prescribed was not essential and had
no relation to the use of connecting lines for a continu-
ous journey. The State has power to require street rail-
ways and like utilities to provide reasonably adequate

facilities and services, even though compliance may be attended by some pecuniary disadvantage. *Railroad Commission* v. *Eastern Texas R. R.,* 264 U. S. 79, 85, and cases cited. But that rule is not applicable here; and the cases referred to do not support appellant's contention. The commission under the guise of regulation may not compel the use and operation of the company's property for public convenience without just compensation.

The evidence sustains the finding of the master and the district court that the joint fare of five cents is confiscatory.

At the time of the foreclosure, appellee's predecessor, the Central Park Company, operated a street railway across town on Fifty-ninth Street and up and down town on the east side and on the west side of Manhattan Island from Fifty-ninth Street to the Battery. The order required the company to exchange transfers with the lines on First, Second, Third, Lexington, Madison, Sixth and Seventh Avenues, Broadway, and Eighth, Ninth and Tenth Avenues. In October, 1919, and February, 1920, the receiver of the New York Railways Company returned the leased lines on Eighth, Ninth and Madison Avenues to their owners, who were not named in or bound by the order. This eliminated some of the through routes. June 3, 1919, with the approval of the commission, appellee abandoned the line on the east side, and, March 24, 1921, abandoned the line on the west side. This left operated by appellee only the Fifty-ninth Street line from First Avenue to Tenth Avenue, and south on Tenth Avenue to Fifty-fourth Street. It then exchanged transfers at intersections of Fifty-ninth Street and First, Second, Third, Lexington, Sixth and Seventh Avenues, Broadway, and Tenth Avenue. The decree, following the prayer of the complaint, enjoins the enforcement of the order, except as to transfers at First and Third Avenues, Broadway and Tenth Avenue.

There is involved only the rates applicable to a part of the company's business. In this respect, the case is similar to *Northern Pacific Railway* v. *North Dakota*, 236 U. S. 585; *Norfolk & Western Ry.* v. *West Virginia*, 236 U. S. 605, and *Northern Pacific Railway* v. *Department of Public Works of Washington*, 268 U. S. 39. The applicable law is plain. The State is without power to require the traffic covered by the fare enjoined to be carried at a loss or without substantial compensation over its proper cost. And such cost includes not only the expenditures, if any, incurred exclusively for that traffic, but also a just proportion of the expenses incurred for all traffic of which that in question forms a part. The cost of doing such business is not, and properly cannot be, limited to the amount by which total operating expenses would be diminished by the elimination of, or increased by adding, the transfer passengers in question. It would be arbitrary and unjust to charge to that class of business only the amount by which the operating expenses were, or would be, increased by adding that to the other traffic carried. Outlays are none the less attributable to transfer passengers because also applicable to other traffic. Operating expenses which are incurred on account of all passengers carried, and which are not capable of direct allocation to any class, should be attributed to the transfer passengers in question in like proportion as such expenses are fairly chargeable to other passengers receiving like service. While the carrier has no constitutional right, to the same rate or percentage of return on all its business, the State may not select any class of traffic for arbitrary control and regulation. Broad as is its power to regulate, the State does not enjoy the freedom of an owner. Appellee's property is held in private ownership; and, subject to reasonable regulation in the public interest, the management and right to control the business policy of the company belong to its owners. *Northern Pacific Railway* v.

*North Dakota, supra,* 595, 596; *Norfolk & Western Ry.* v. *West Virginia, supra,* 609; *Interstate Commerce Commission* v. *Chicago G. W. Ry.,* 209 U. S. 108, 118.

It does not appear whether the commission, when making the order, acted without or upon sufficient evidence. *Northern Pacific Railway* v. *Department of Public Works of Washington, supra.* But the presumption is that the order was reasonable and valid, and the burden was on appellee to establish its invalidity. It is well known, and the court will take judicial notice of the fact, that the purchasing power of money has been much less since 1917 than it was in 1912, when the order was made; and that the cost of labor, materials and supplies necessary for the proper operation and maintenance of street railways has greatly increased. In the preamble to its order of July 20, 1920, prescribing a joint fare of seven cents instead of five cents, the commission stated: " The Commission after a careful consideration of the testimony and briefs submitted by counsel, being of the opinion that the convenience of the travelling public necessitates the continuance of the said transfers, but that the maximum joint rate of five cents fixed in the said order of October 29, 1920, [1912] is, by reason of the changed conditions under which the said railroad companies are operating, unjust, unreasonable, and insufficient to render a fair and reasonable return for the service furnished, it is ordered   .   .   ." etc. Appellants argue that this does not amount to a finding that the joint fare of five cents is confiscatory. But clearly, the language properly may be taken to mean that the rate is too low and violates the Constitution. That is the plain import of the words used. A commission or other legislative body, in its discretion, may determine to be reasonable and just a rate that is substantially higher than one merely sufficient to justify a judicial finding in a confiscation case that it is high enough to yield a just and reasonable return on the value of the property

used to perform the service covered by the rate. The mere fact that a rate is non-confiscatory does not indicate that it must be deemed to be just and reasonable. It is well known that rates substantially higher than the line between validity and unconstitutionality properly may be deemed to be just and reasonable, and not excessive or extortionate, *Trier* v. *C., St. P., M. & O. Ry. Co.,* 30 I. C. C. 352, 355; *Holmes & Hallowell Co.* v. *G. N. Ry. Co.,* 37 I. C. C. 625, 635; *Dimmitt-Caudle-Smith Live Stock Co.* v. *R. R. Co.,* 47 I. C. C. 287, 298; *Detroit & M. R. Co.* v. *Michigan Railroad Commission,* 203 Fed. 864, 870. But the language above quoted does not show, and there is nothing to suggest, that the commission had in mind or intended any such distinction.

About the time the order of October 29, 1912, became effective, the carriers agreed upon a division of the joint fare. There was assigned to the appellee two cents and to the other carriers three cents out of each fare. This apportionment was accepted by the master and district court. It is not challenged by any assignment of error; and it does not appear that appellee was entitled to more.

The evidence shows that, upon the authorization of the commission, appellee issued capital stock to the amount of $734,000, bonds for $1,750,000, and a note for $73,091.53. The total is $2,557,091.53. But, because of abandonments, changes and lack of supplementing evidence, this figure is not a good indication of the cost or of the value of the property in use at the time of the trial. At the trial, appellee called a valuation engineer who, in May, 1921, had been employed by the commission to make a valuation of all the street railroads in New York City. His estimate of the cost of reproduction of appellee's property in 1921 was $2,859,754. He deducted from this $77,000 on account of errors in the inventory and $128,246, his estimate of the cost of putting the property in first-class condition, leaving $2,654,508. There

was other evidence. of value. The master and district court found the value to be $2,600,000. Appellants contend that this finding is not sustained by the evidence. In the view we take of this case, it is not necessary to determine the value of the property, or whether total revenue exceeds total operating expenses and taxes by a sum sufficient to pay a reasonable return on the value of all the property. However, we are satisfied by the evidence that a fair and reasonable return on the value would be in excess of $91,154.58, the annual interest at five per cent. on the indebtedness of $1,823,091.53,—evidenced by the bonds and note.

There follows a statement showing by fiscal years, ended June 30, and for three months ending September 30, 1922, (1) the number of passengers carried at five cents each; (2) the number of joint rate passengers carried at two cents each; (3) the average revenue per passenger, exclusive of free transfer passengers; (4) the average cost per passenger, including operating expenses and taxes, but excluding any amount for depreciation or interest; (5) the average cost' per passenger, exclusive of depreciation, but including interest at five per cent. on the company's bonds and note.

|        | (1)       | (2)        | (3)   | (4)   | (5)   |
|--------|-----------|------------|-------|-------|-------|
| 1918   | 6,450,687 | 13,512,033 | 2.9 c. | 2.75c. | 3.20c. |
| 1919   | 5,440,766 | 12,817,674 | 2.89c. | 2.49c. | 3.00c. |
| 1920   | 7,186,735 | 10,171,479 | 3.2 c. | 2.93c. | 3.46c. |
| 1921   | 8,119,325 | 7,948,148  | 3.5 c. | 3.52c. | 4.10c. |
| 1922   | 8,100,009 | 5,720,102  | 3.68c. | 2.92c. | 3.58c. |
| *      | 1,690,229 | 1,426,923  | 3.6 c. | 3.03c. | 3.77c. |

These figures show that the operating expenses and taxes, both before and after the injunction, substantially exceeded two cents, the amount received by appellee per transfer passenger. Exclusive of any allowance for a depreciation reserve or for interest, the average cost per

* Three months ended September 30, 1922.

passenger has been from about 24 per cent. to about 51 per cent. in excess of two cents; and, if interest on the debt at five per cent. be included, it appears that the excess has been from about 50 per cent. to 105 per cent. And the record shows that for some time prior to the injunction the total revenue from all sources, including revenue for transportation, advertising, rentals and interest on deposits, was less than a sum sufficient to cover operating expenses, taxes and interest on the debt, and also shows that both before and after the injunction such total revenue was not sufficient to yield a reasonable return on the value of the property, after paying operating expenses and taxes.

The master found that a resumption of the transfer traffic enjoined would result in an increase of revenue of $46,326.72 per year and of operating expenses of $105,-900 per year. These findings were not confirmed. The district court found that the revenue would be increased by about $42,000 per year and operating expenses about $46,000 per year.

The evidence undoubtedly justifies the conclusion that a resumption of such transfer business would require additional operating expenses in an amount in excess of the resulting increase of revenue, and that appellee's fair share of the joint rate would be substantially less than the operating expenses and taxes justly chargeable to that business. It follows that the rate is confiscatory. We need not determine the value of the property attributable to the traffic in question or what would constitute a reasonable rate of return.

*Decree affirmed.*