QUEENS BOROUGH GAS & ELECTRIC CO.
v. PRENDERGAST et al.

District Court E. D. New York.   May 2, 1928.

No. 1276.

Whitman, Ottinger, Ransom, Coulson & Goetz, of New York City (Jacob H. Goetz, of New York City, of counsel), for plaintiff.

Charles G. Blakeslee, of Binghamton, N. Y. (Charles E. Murphy, of New York City, of counsel), for defendant Public Service Commission of State of New York.

John Holley Clark, Jr., of New York City (Francis R. Stoddard, Special Deputy Atty. Gen., of counsel), for defendant Attorney General of New York.

Before SWAN, Circuit Judge, and CAMPBELL and INCH, District Judges,

holding court pursuant to section 266 of the Judicial Code (28 USCA § 380).

SWAN, Circuit Judge. ■ The bill of complaint challenges the constitutionality of chapter 899 of New York Laws of 1923, effective June 2, 1923, on the ground that it (1) impairs the obligation of a contract; (2) is confiscatory; and (3) denies to plaintiff the equal protection of the laws. The master correctly rejected the first contention, and properly confined his decision to the question of confiscation. Brooklyn Union Gas Co. v. Prendergast, 7 F.(2d) 628 (D. C. E. D. N. Y), affirmed 272 U. S. 579, 47 S. Ct. 199, 71 L. Ed. 421; Ottinger v. Consolidated Gas Co., 272 U. S. 576, 47 S. Ct. 198, 71 L. Ed. 420. He found that enforcement of the statute would result in confiscation, and he recommended a decree enjoining both the rate and the standard which the statute prescribes. To his report the defendants have filed numerous exceptions, and the cause is now before us upon these exceptions and the plaintiff's motion for confirmation of the report.

Although the statute in question has been held to be confiscatory in its application to other corporations distributing gas within New York City (the decisions being cited in the opinion of the special master under the appellation of the "Gas Cases"), it is contended by the defendants that the present case is distinguishable on its facts, and that the plaintiff has failed to prove the statutory rate and standard to be confiscatory as to it. As one basis for this contention it is urged that the plaintiff has made no proper segregation between its electric business and that part of its gas business which is subject to the statute. The principle that the respective costs of the two services must be considered separately is conceded. See Municipal Gas Co. v. Public Service Commission, 225 N. Y. 89, 121 N. E. 772. In attempted conformity with that principle, plaintiff has distributed upon its books of account between the gas and electric departments its operating and capital charges, charging to each department such expenditures as are identifiable with it, and apportioning equally between the two such charges as are incurred for both in common. The master has found that this basis of apportionment is shown by plaintiff's testimony to be proper. It is the same basis as that approved by the Public Service Commission in February, 1923, in connection with the purchase of plaintiff's common stock by the Long Island Lighting Company, and is the basis which has been used in

plaintiff's annual reports to the commission, without objection by it. The defendants now charge that the division is arbitrary, but they have adduced no specific instances of erroneous apportionment. The master's decision on this subject is correct.

■ Another and more serious basis for the contention that plaintiff has failed in its proof is the argument that there is no evidence of the operating cost of business in Queens county only, or of the value of property used and useful in supplying consumers in Queens county. The plaintiff serves consumers of gas in Queens county, to which territory the statute is applicable, and also consumers in a contiguous area in Nassau county which is outside the city of New York, and so beyond the reach of the statute. All of the gas sold by the plaintiff is manufactured in a single plant, and is distributed through a unified system of mains to consumers in both counties. Shortly prior to the passage of the statute in question the Public Service Commission had authorized the plaintiff to charge its customers a uniform rate of $1.30 per 1,000 cubic feet of gas (with steps down to $1.10 for larger quantities), whether the customers were located in Nassau or in Queens. The plaintiff operates its gas plant as a unitary system, and in making proof of its operating expenses and of its capital values made no attempt to allocate costs and values between service to Nassau consumers and service to Queens consumers. It proved, however, the quantity of gas sold in each county during the several periods under consideration, and the relative demand made by each county upon the plaintiff's plant. Relying upon such authorities as Knoxville v. Knoxville Water Co., 212 U. S. 1, 12, 13, 29 S. Ct. 148, 53 L. Ed. 371, Minnesota Rate Cases, 230 U. S. 352, 435, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, and Banton v. Belt Line Railway, 268 U. S. 413, 421, 45 S. Ct. 534, 69 L. Ed. 1020, the defendants contend that, in order to prove its case, the plaintiff should be compelled to prove the reasonable costs and the value of the property used and useful in serving its consumers of gas in Queens county alone, and that the bill of complaint should be dismissed, or the proofs reopened, so that plaintiff may cure its failure to furnish such facts.

The master found (finding 70) that the net necessary and reasonable operating cost of supplying in both counties gas of the quality actually furnished, after deducting miscellaneous operating revenues, and exclu-

sive of any return whatever upon the property or investment of the plaintiff, was as follows:

|  |  | Per M. c.f. of Gas Sold. |
|---|---|---|
| Calendar year | 1922 | $1.0587 |
| Year ending May 31 | 1923 | .9952 |
| Calendar year | 1923 | 1.0239 |
| Calendar year | 1924 | .9397 |
| Calendar year | 1925 | 1.0214 |

He found that the cost would be greater if the plaintiff were to comply with the statutory standard of 650 British thermal units. He concluded from these facts alone that the statutory rate of $1 for gas sold in Queens county is shown to be confiscatory as to the plaintiff.

The defendants say that this conclusion involves an assumption that the unit of cost for manufacturing and selling gas in Queens county is the same as in Nassau, and to prove the falsity of such assumption they introduced the testimony of their expert, Mr. Little, to the effect that it would cost more to manufacture and deliver gas for the Nassau area than for the Queens area. He stated that there was no exact way to figure the additional cost, but he estimated it at 6.5 cents per 1,000 cubic feet. He testified further that the wide fluctuations between the low winter demand and the peak summer demand in Queens county would require a larger investment for plant capacity to be allocated to Queens than to Nassau, where the load throughout the year is more even, and therefore, if a theoretical apportionment of both investment and operating expenses were made, he concludes: "Approximately, I would say there would be no material difference in the cost as between the two counties, when you take into account investment as well as operating charges." Mr. Little's estimate of 6.5 cents additional operating cost for service in Nassau was disputed by Mr. Davies, plaintiff's gas superintendent.

Moreover, some additional expense, though how much does not appear, would be incurred by supplying in Queens county gas of the statutory standard of 650 British thermal units. But, even if it be assumed that a proper allocation of operating expenses between the Queens and the Nassau territory would reduce the cost of gas supplied to Queens consumers by the total amount of Mr. Little's estimate of 6.5 cents, the operating cost of approximately 99 cents found by the master would be reduced only to 92½ cents per 1,000 cubic feet. On a dollar rate, this would leave a profit of only 7½ cents per 1,000 cubic feet of gas sold

to cover return on plaintiff's investment used and useful in supplying gas to Queens county consumers. In the calendar year 1923 the amount of gas sold by plaintiff to Queens consumers was 563,284,900 cubic feet. The profit on this quantity at 7½ cents per 1,000 cubic feet would be $42,246.37. This would be a return of slightly less than 4¼ per cent. upon a capital investment of $1,000,000. Under the evidence bearing upon the valuation of plaintiff's properties, no one could seriously urge that the value of so much of plaintiff's plant as is used and useful in supplying gas to Queens consumers is less than $1,000,000, or that a rate which gave a return such as the above estimate was not confiscatory.

The most extreme claim made by defendants, based upon the purchase of plaintiff's common stock by the Long Island Lighting Company with the approval of the Public Service Commission, concedes that the true market value as of June 1, 1923, of the property allocatable to Queens county business was $1,880,000; and this figure was arrived at by allocating to Queens only 50 per cent. of the total property valuation, although the Queens consumers create nearly 75 per cent. of the maximum demand upon the plant.

Physical segregation of the plaintiff's plant with respect to the business done in each county is impossible. A theoretical allocation of costs and values would, according to Mr. Little's testimony, be a guess at the best and would serve no practicable purpose. To say, as defendants do, that a corporation which has honestly kept and reported its accounts for years in the manner required by the state officers having authority to regulate the manner of keeping and reporting accounts, namely, the Public Service Commission, cannot escape confiscation because it cannot make an allocation of costs and values with respect to its business in different counties, when the defendants' expert says such allocation is impracticable, seems a very harsh doctrine, and is one which we should be reluctant to announce. The present record does not compel it. If the plaintiff may not treat its business as a unit, but must show that the portion of it subject to the statute cannot be operated at the statutory rate without confiscation, as defendants contend, we think it has adequately carried that burden.

The evidence shows that plaintiff's actual and reasonable operating cost for the entire system is 99 cents per 1,000 cubic feet—assuming for the present that the master's find-

ing of this figure is correct—and that to comply with the statutory standard of 650 B. t. u. would increase the cost; that the maximum of cost attributable to Nassau territory in excess of the average for both counties is 6.5 cents per 1,000 cubic feet; that the total property value as of the day preceding the date when the statute took effect was, on the theory most favorable to defendants, $3,760,000, on the theory of reproduction cost less depreciation, as figured by defendants' expert, $6,790,000, and on the figures adopted by the master, $8,142,000; and that at the least one-half of the total value should be attributed to the property used and useful for Queens county business. It further appears that, if the actual operating costs for the entire system were apportioned between the two counties upon the ratio of the sales of gas in each, no substantial difference in the cost of service between the two territories would be shown. These facts are sufficient to prove that the application of the statutory rate to Queens county business would preclude any adequate return on the value of the property attributable to that business. And the margin of confiscation is so great that no defensible allocation of costs and values between the two counties could change the result. Consequently we think it would be futile, and we hold it to be unnecessary, to require the plaintiff to prove a more exact apportionment of operating costs and capital values between its Queens county and Nassau county business.

The foregoing argument has proceeded upon the assumption of the correctness of the master's finding of the unit of operating cost for both counties as 99 cents per 1,000 cubic feet of gas sold. The defendants' exceptions challenge that finding. They do not deny that the plaintiff actually incurred every item of expense as claimed, nor have they introduced evidence to question the reasonableness of any item; but they contend in argument that some of the expenditures appear upon their face to be unusual and nonrecurrent. Most of the questions thus raised have been decided adversely to the defendants' contentions in the earlier "Gas Cases," and it would serve no useful purpose to discuss them in this opinion. If all items, the inclusion of which may be doubtful, are eliminated, the rate will be effected by only a few cents, and the confiscatory effect of the statute will remain unchanged.

The master has carefully considered the value of the property used and useful in plaintiff's gas business and the rate of return to which plaintiff is entitled. Without in any sense intimating any disagreement with his conclusions as to the evidence or the law, we think it unnecessary for the court to go into these questions, because the finding of cost of operation is such as to preclude a fair return upon a valuation which the defendants do not question, namely, a valuation of $3,760,000, at least one-half of which is attributable to property used and useful in plaintiff's business in Queens county.

That the standard of 650 B. t. u. is inseparable from the statutory rate has been previously decided in this district. Brooklyn Union Gas Co. v. Prendergast (D. C.) 7 F. (2d) 628; Kings County Lighting Co. v. Prendergast (D. C.) 7 F.(2d) 192. The report is approved, except as to the findings relating to the value of plaintiff's property. In lieu thereof it is found that the value of plaintiff's property used and useful in its gas business was as of the date of June 1, 1923, and still is, at least the sum of $3,760,000, and that the value of plaintiff's property used and useful in supplying gas to consumers in Queens county was as of June 1, 1923, and still is, at least the sum of $1,880,000. It is also found that the net necessary and reasonable operating cost of supplying gas in Queens county of the quality actually furnished, after deducting miscellaneous operating revenues, and exclusive of any return upon the property of plaintiff was as follows:

| | | Per M. c.f. of Gas Sold |
|---|---|---|
| Calendar year | 1922, not less than... | $ .9937 |
| Year ending May 31, | 1923, not less than... | .9302 |
| Calendar year | 1923, not less than... | .9589 |
| Calendar year | 1924, not less than... | .8747 |
| Calendar year | 1925, not less than... | .9564 |

As thus modified, the report is affirmed, and a decree will be entered as recommended in the report.