## INTERNATIONAL RY. CO. v. PRENDERGAST et al.

District Court, W. D. New York. November 20, 1928.

in the city of Buffalo to 10 cents for a single trip by an adult and three tokens for 25 cents, on condition of acceptance and agreement that certain city roadbeds be reconstructed or repaved, was in fact accepted by plaintiff, thereby constituting a waiver and abandonment of the pending action; and (2) that plaintiff's theory, as set forth in the bill, that the rate should give an adequate return on its entire street service system, including properties in other communities to and through which its lines from Buffalo extend, is not maintainable and fails, on its face, to state a cause of action.

The first ground is also strongly urged in opposition to the motion for leave to amend and file a supplemental bill, to which reference will be made presently. I am not convinced that the commission's order of June 8, 1927, and plaintiff's operations and rates thereunder, eventuated in an adjustment, settlement, or abandonment of the pending action. Both sides permitted the action to rest in abeyance, by plaintiff presumably to ascertain the effect of the new rate on its income—a delay to which defendants acquiesced. The asserted understanding between the respective attorneys, that the modified rate was practically a discontinuance of the pending action, cannot be accorded weight in the absence of a stipulation to that effect. The resulting delay was not so prolonged as to make the action stale or operate as a bar to going ahead with it; nor can it be determined that the fact that the city of Buffalo required plaintiff to incur certain expenditures for repaving certain roadbeds is the real reason for application to file a supplemental bill. This averment is thought merely incidental to the gravamen of the original bill, both bills alleging a confiscation of plaintiff's property because of the failure of the commission to prescribe fair and reasonable rates, and its refusal to allow the schedule of tariffs submitted September 16, 1926. Its subsequent action in returning the tariffs was legislative, and the right to sue, claiming confiscation, accrued. The order of the commission, allowing the present increased rate, after refusal of the tariffs specifying somewhat larger rates, provides that it shall not be effective for any purpose unless accepted under the imposed conditions. Its acceptance was accompanied by a rider that the increase would not produce a sufficient revenue or fair return, and was believed confiscatory, and plaintiff expressly reserved the right thereafter to allege and prove insufficiency of said rates, either before the commission or any court of

Killeen & Sweeney, of Buffalo, N. Y. (Henry W. Killeen and James C. Sweeney, both of Buffalo, N. Y., and Coleman J. Joyce, of Philadelphia, Pa., of counsel), for plaintiff.

Russell B. Burnside, of Albany, N. Y., Assistant Counsel for Public Service Commissioners.

Gregory U. Harmon, Corp. Counsel, of Buffalo, N. Y. (Jeremiah J. Hurley and Fred C. Maloney, Deputy Corp. Counsel, both of Buffalo, N. Y., of counsel), for the City of Buffalo.

George W. Knox, of Niagara Falls, N. Y., for City of Niagara Falls.

James P. Lindsay, of North Tonawanda, N. Y., for City of North Tonawanda.

George W. Riley, of Lockport, N. Y., for City of Lockport.

Raymond G. Heim, of Buffalo, N. Y. (Marvin S. Burt, Jr., of Buffalo, N. Y., of counsel), for the Village of Lancaster.

HAZEL, District Judge. The motion to dismiss the pending bill relating (1) to the 8-cent fare for a single adult passenger and two tokens for 15 cents, in force in 1926, is primarily based upon the ground that the order of the Public Service Commission, dated June 8, 1927, increasing the local fare

competent jurisdiction. As said in Banton v. Belt Line R. Co., 268 U. S. 413, 45 S. Ct. 534, 69 L. Ed. 1020:

"A rate that is just and reasonable when prescribed, subsequently may become too low, unreasonable and confiscatory." Plaintiff, in argument, suggested challenging the right of the commission to impose the prescribed conditions relating to repaving roadbeds, but any such question need not be dwelt upon at this time. The asserted changed conditions in operation arising from abandonment of certain tracks and routes, since the modification became effective, and substituting bus service in certain instances, is likewise insufficient reason for dismissing the original bill, since such matters are matters of evidence obviously bearing upon the primary question as to whether the modified rate in fact was confiscatory. Defendants concede that dismissal of the bill would not preclude plaintiff from claiming a new confiscation by reason of the new rates, either before the commission or by bringing suit, alleging continued confiscation, in the state court or in this court; hence I perceive no substantial reason for dismissing the original bill and requiring plaintiff to begin anew.

It may be, as defendants urge, that because the same service is not rendered in all parts of plaintiff's railroad, the service consisting of local transportation in different communities, Buffalo, Lockport, Niagara Falls, Olcott, Tonawanda, and Lancaster, including, in some intances, long-distance routes similar to steam railroads in suburban localities, or because community rates, revenues, expenses, and mileage rates may be readily separated, it ought not to be determined that plaintiff's system constitutes such a unitary connection as to permit deficits in certain localities to be met or compensated by more profitable rates in other localities; but this question is so doubtful, in my opinion, that I am disinclined to determine it as a matter of law. The bill may not be maintainable on this theory, while as to other claims of confiscation the evidence may be helpful in determining the equities. In a separate paragraph, for example, the old Buffalo rate is claimed to be confiscatory, while the proposed supplemental bill likewise prays for a decree of confiscation as to the new or present rate at Buffalo, and includes separate rates of other communities. The question, therefore, whether the service should be considered as a whole and revenues and costs based on a unitary system without segregation into communities or community values in the effort to establish a fair and equitable proportionate rate, must of necessity await the hearing.

Although, under Equity Rule 29, every point of law going to the entire bill or a part thereof may be determined before final hearing, in the discretion of the court, on motion to dismiss, yet I cannot say that insufficiency is so apparent on the face of the bill that there should be dismissal without answer.

The allegations must be taken as true, and, taken separately or collectively, they do not on their face show that no relief whatever should be granted. Conway v. White (C. C. A.) 292 F. 837; O'Keeffe v. City of New Orleans (D. C.) 273 F. 560.

I now turn to plaintiff's motion to file an amended and supplemental bill, and in this connection cite a few adjudications which also bear upon the motion to dismiss.

On reading Equity Rules 19, 28, 34 and the decisions bearing thereon, it is plain that the court has the discretionary right to permit amendments to the existing bill, pleading relevant matters occurring before the bill was filed, and also to file a supplemental bill as to new matters arising subsequent to the original bill, unless the supplemental bill avers evidence which may be disclosed under the original bill. The new facts contained in the supplemental bill concededly came into existence after the first bill was filed, were unknown to plaintiff, and are germane to the subject of the original bill. Such new facts and matters were not provable under the original bill, and accordingly, in my opinion, the discretion of the court is rightly invoked. The practice in this circuit has always been liberal to an applicant for leave to file a supplemental bill, inasmuch as it was thought that refusal would operate as a bar to measuring equitable rights sought to be enforced. Oregon & T. Co. v. Northern Pac. R. Co. (C. C.) 32 F. 428; Banks Law Pub. Co. v. Lawyers' Co-op. Pub. Co. (C. C.) 139 F. 701; Ball v. Breed (C. C. A.) 294 F. 227.

The asserted new matter may be of doubtful substantiation, as well as the entire theory of the bill, including the right to the relief asked, yet these issues are not now determinable. Oregon & T. Co. v. Northern Pac. R. Co., supra. Although new statements are inserted in the proposed supplemental bill, amendments, and new matter together with certain omissions, I do not think the inclusion or omission classified the supplemental bill as a new bill based on matters unconnected with the original bill. Both the old and the new rates are alleged to constitute a wrongful taking of plaintiff's properties

in the different communities. In St. Louis & S. F. R. Co. v. Hadley (C. C.) 155 F. 220, a somewhat similar situation arose. Plaintiff sought to restrain the enforcement of a certain freight rate in violation of constitutional rights. While the action was pending, another statute was passed by the Legislature fixing passenger rates, and on application to file a supplemental bill asserting that the second statute was also confiscatory, the court ruled that both acts might properly be brought in as an issue by supplemental bill, but the court regarded it as unimportant whether the new issue was by supplemental bill or made a part of the original bill.

 Defendants contend that the action should not proceed under supplemental bill because it complains of a new rate, while the initial bill is under an earlier rate. But, as in both the same relief is asked, arising out of the identical legislative act in refusing the tariff filed, I can see no controlling point to this contention. The supplemental bill may be based upon different valuation and proposed rates, income, and costs of operation, but any changes of that description do not put defendants at a disadvantage, for such matters are, I think, for the most part evidentiary. That the rejection of the tariff for a straight 10-cent fare was a final determination is beyond question. People v. Willcox, 194 N. Y. 383, 87 N. E. 517; Prendergast v. N. Y. T. Co., 262 U. S. 48, 43 S. Ct. 466, 67 L. Ed. 853. It was neither necessary to apply for modification of the present rate, nor was it required that plaintiff should begin suit to prevent confiscation in the state court before asking for relief in this court. In some circumstances, the state courts, it is true, are empowered by the Legislature to review the determination of a public utilities board, not solely in a judicial sense, but including conferred power to finally establish the rate. The decision of the commission or utilities board in such instances is not final. Prentis v. Atlantic, etc., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, and compare Bacon v. Rutland R. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538. Concededly in this state the legislative power and authority of the commission to fix rates is clearly defined by statute, and its action is reviewable, to prevent confiscation, by the proper state court, yet such judicial power is not exercised to the exclusion of the federal courts. On this point it will suffice to cite Banton v. Belt Line R. Co., supra, and Prendergast v. Tel. Co., 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853. The Supreme Court, in Pac. Tel. Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975, Mr. Chief Justice Taft writing the opinion, also held, in a case where the Supreme Court of the State of Washington had authority to pass judicially and legislatively on the question of rates, that the value of the property upon which the rate was based by the court did not bar the utility company from seeking relief in the federal court where the plea of confiscation was the issue.

 It is separately contended that fares cannot, in any event, be increased at Niagara Falls since, it has previously been decided, in the Court of Appeals of this state in litigation between plaintiff and said city, that under the franchise contract the commission had no power to alter the rate therein provided, and hence plaintiff is barred from seeking from the municipality a higher rate. But this plea, based upon res adjudicata, is not now determinable, since ordinarily the rights of the parties involve a question of fact. The record, upon which such a plea must be based, is not proffered, and the usual procedure is to present the question by plea or answer and not by motion to dismiss. Keown v. Hughes (C. C. A.) 265 F. 572; Desert King M. Co. v. Wedekind (C. C.) 110 F. 873.

 As already stated, the original and supplemental bills seek to enjoin the defendant Public Service Commission from confiscating plaintiff's property in violation of its constitutional rights, and allege that the commission interferes and estops plaintiff from collecting a straight 10-cent fare in the city of Buffalo, and charging the rates specified in the rejected tariff. The various municipalities, therefore, adverse to the plaintiff, are proper parties to the determination of the questions involved. The tariff schedule asks for increased rates throughout the system, and, since the tracks and routes pass through these localities, and certain of its property is contained therein, they obviously are interested in the outcome of the litigation. The Public Service Commission, which returned the tariffs, and which, as alleged in the original and supplemental bills, has not placed a value on plaintiff's system or properties in the various localities, is the sole necessary party in so far at least as Buffalo, North Tonawanda, Lockport, and Lancaster are concerned. Their interest in the pending litigation of the municipalities, though admittedly important, constitutes them all proper parties because of their right to oppose, not only the theory of the bill or proportionate rates, but also the claimed

confiscation in localities by the rates now in force. At the hearing it was suggested that in any event, unless the action was dismissed, plaintiff should be required to file a bill of particulars of the asserted value of its properties in the various localities, and the separate receipts from transportations. In view of the conceded fact that plaintiff will be called upon to prove affirmatively the separate value of its properties, and its separate income from transportation, I can see no substantial reason for noncompliance.

The motion to dismiss the original bill is denied; and the motion to file amended and supplemental bill is granted.