In the Matter of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, April 25, 1985

#### APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle* (*Robert L. Daileader, Jr.,* and *Richard N. George* of counsel), for petitioner.

*David E. Blabey* (*Lawrence Malone* and *Jaclyn A. Brilling* of counsel), for respondent.

#### OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner, Rochester Gas and Electric Corporation, provides gas, electric and steam services to various customers in the City of Rochester area. Since 1972, petitioner's steam sales and customers have been steadily declining in number to the point that, in 1979, the Department of Public Service recommended that petitioner review the economic feasibility of its steam system. In August 1982, in conjunction with its filing for increased gas and electric rates, petitioner requested an increase in its steam rates; hearings on the three proposed rate changes, held on one record, commenced in November 1982. The following January, petitioner submitted its report, regarding the

practicability of its steam department, to respondent and all of petitioner's steam customers. That report concluded that a customer-induced phase-out of steam service was inevitable. To more fully consider the implications and reasonableness of petitioner's steam report, respondent ordered a separate expanded proceeding in the steam rate case.

Thereafter, by order dated July 18, 1983, respondent established temporary steam rates along with permanent gas and electric rates. The temporary steam rate increase of 9%, one half that recommended by the administrative law judge (hereinafter ALJ), reflected respondent's aim to mitigate the impact an excessively sharp steam rate increase would have on the departure of existing customers and to help preserve the status quo while the expanded case was pending. Petitioner sought a rehearing on the ground that the 9% temporary increase was not only noncompensatory but confiscatory, for it yielded a negative return on common equity (i.e., the steam revenues authorized would not cover petitioner's preferred stock dividends and interest on debt capital). Although adhering to the 9% increase on rehearing, respondent did grant additional rate relief sufficient to avoid a negative return on the common stock investment.

In August 1983, petitioner filed for steam revenue increases for the rate year running from August 1, 1984 through July 31, 1985. Hearings on this application were combined with the ongoing expanded rate proceeding and the ALJ issued separate recommended decisions on the two applications. In the expanded rate proceeding, he authorized an increase in steam rates sufficient to enable petitioner to earn a 6.9% return on equity and an over-all rate return of 8.4%. As for the 1984-1985 rate year case, the steam rate increase granted petitioner translated into a return on equity of 3.97% and an over-all authorized rate return of 7.38%. These returns, as petitioner notes, were substantially less than respondent authorized petitioner to recover in its electric and gas rate cases for the same years.

In its opinion issued July 11, 1984, respondent agreed with petitioner that a regulated steam system was indeed economically unworkable and directed petitioner to submit a detailed plan for abandonment of its steam business. In rejecting the ALJ's recommendation respecting petitioner's steam rates, respondent applied the following standard in determining the appropriate steam rates: "Faced as we thus are with setting rates for a reasonable phase-out period, we are willing to authorize only such revenues as may be necessary, given the existing number of customers, to cover the expenses incurred in providing service." As a result, in the expanded proceeding, respondent

made permanent the temporary, noncompensatory rate set July 18, 1983 (as revised on rehearing), and in the later rate year steam case permitted a revenue increase sufficient only to enable petitioner to recover its out-of-pocket expenses. The instant CPLR article 78 proceeding ensued.

Petitioner contends that respondent acted unconstitutionally in fixing the steam rates for the years in issue at a level designed only to enable petitioner to recover its operating expenses. While it is true that a regulated company is generally entitled to recapture its prudently incurred costs, including a return on its investment (*see, Power Commn. v Hope Gas Co.,* 320 US 591, 603), due process does not "insure values or * * * restore values that have been lost by the operation of economic forces" (*Market St. Ry. Co. v Commission,* 324 US 548, 567). Neither justice nor the Constitution obliges consumers to ensure a profitable return on an unprofitable enterprise such as petitioner's steam business (*see, San Diego Land & Town Co. v Jasper,* 189 US 439, 446-447).

Petitioner's reliance on Public Service Law § 85 is misplaced. The statute provides that in determining the price to be charged for steam, respondent may consider all relevant facts "with due regard among other things to a reasonable average return upon capital actually expended" (Public Service Law § 85). That language suggests no absolute guarantee of steam rates yielding a profit; rather, it reflects a constitutional principle which requires a balancing of the interests of the consumer against the interests of the regulated company's shareholders (*see, Power Commn. v Hope Gas Co., supra,* p 603). Here, petitioner's own study acknowledged that the steam business could not be returned to economic viability and recommended its termination, and the record justifies respondent's concurrence with petitioner on this point. Under the circumstances, we find no error in respondent's determination that petitioner's customers should not bear the burden of transforming its failing steam business into a success (*see, Market St. Ry. Co. v Commission, supra,* pp 566-567). Since respondent has reached a just and reasonable result supported by substantial evidence, we must confirm its determination. Petitioner's other contentions of error, including the allusion that its steam rates are plainly inconsistent with its gas and electric rates, are also unavailing. With respect to this disparity in gas and electric and steam rates, we have not been made aware of any constitutional or statutory right in petitioner to enjoy the same rate of return for each of its various services (*see, Banton v Belt Line Ry.,* 268 US 413, 421).

MAIN, J. P., WEISS, MIKOLL and HARVEY, JJ., concur.
Determination confirmed, and petition dismissed, with costs.