### *No. 10,037.

MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY vs. BOARD OF REVIEWERS, PARISH OF IBERIA.

1. The actual cash value of property is the constitutional basis of its taxation.
2. The actual cash value of real or personal property is the price it would sell for cash, in the ordinary course of business, free from all incumbrances, otherwise than at forced sale.
3. Neither the price of investment in, nor the net revenue, nor profit earned by a railroad is a fixed criterion of value in assessment matters.
4. The market value of the stocks or bonds, is *one* of the truest *criteria* of the value of a road; yet it does not hold when the corporation becomes insolvent.
5. There exists no rigid rule for the valuation of property, which is affected by a multitude of circumstances which no rule can forsee, or provide for. The assessor must consider all these circumstances, and elements of value, and must exercise a prudent discretion in reaching a conclusion.

This maxim applies with equal force to the board of reviewers.

APPEAL from the Twenty-first District Court, Parish of Iberia. *Mouton,* J.

---

*D. Caffery* and *Leovy & Blair* for Plaintiff and Appellee.

---

*T. D. Foster* and *S. Perry* for Defendant and Appellant.

---

The opinion of the Court was delivered by

WATKINS, J. The plaintiff company contests the correctness of the valuation of $10,000 per mile, placed by the defendant board on its property — embracing road-bed, rails, cross-ties and switches — and consisting of sixteen miles of main track, and nine miles of branch track, extending from the main track to the Avery salt works. It likewise contests, as a double and excessive valuation, that made on the

---

*This case was decided in the month of May. 1887.

portion of the main track and siding which traverses the corporate limits of the cities of New Iberia and Jeanerette—contending that these segments are embraced in the valuation of the main track.

The total valuation fixed by the defendant board is $253,400, while that fixed in the decree of the judge *a quo* is $152,720.

Counsel for the board says in his brief: " the judgment constitutes this amount the basis of assessment, subject to the two-thirds rule adopted by the board. The application of that rule makes the *judgment valuation* $101,813 33⅓. From this the board has appealed."

The contention of the appellant is that its valuation is correct; while that of the appellee is that the valuation should be reduced to the sum of $957,293 75, as prayed for in its answer to the defendant's appeal.

The appellant further contends that it was necessary that a separate valuation and assessment should be made of that part of plaintiff's property that is situated within the corporate limits of New Iberia and Jeanerette, in order that there might be fixed a basis for city taxation, therein; and this one mile of main track and siding, and other property therein, were not included in the valuation of the main track of sixteen miles in length.

In this view the judge *a quo* seems to have concurred, except with regard to the road-bed.

The following is the valuation made by the board, viz :

PROPERTY IN PARISH OUTSIDE THE INCORPORATED TOWNS.

| | | |
|---|---:|---:|
| 16 miles main track at $10,000 | $160,000 | 00 |
| 9 miles Salt Mine track at $6,000 | 54,000 | 00 |
| 1 station house at Olivier | 50 | 00 |
| 1 section house in seventh ward | 500 | 00 |
| 1 section house and depot in fifth ward | 750 | 00 |
| Total | $215,300 | 00 |

PROPERTY WITHIN INCORPORATED TOWNS.

NEW IBERIA.

| | | |
|---|---:|---:|
| 1 mile main track | $ 10,000 | 00 |
| 1 mile side track and switches | 6,000 | 00 |
| 1 lot and depot | 2,500 | 00 |
| 1 lot bounded N. by Saintes, S. by railroad, E. by railroad, W. by Main street | 500 | 00 |
| 1 lot bounded N. by railroad, S. by Weeks, E. by Fulton street, W. by Main street | 300 | 00 |
| 1 boiler and pump on bayou | 300 | 00 |
| Total | $19,600 | 00 |

Railroad and Steamship Company vs. Board of Reviewers.

### JEANERETTE.

| | | |
|---|---|---|
| 1 mile main track | $ 10,000 | 00 |
| 1 mile side track and switches | 6,000 | 00 |
| 1 lot and depot | 2,000 | 00 |
| 1 section house | 500 | 00 |
| Total | $ 18,500 | 00 |
| Making the aggregate | $253,400 | 00 |

To which the judgment of the court reduced it as follows, viz:

| | | |
|---|---|---|
| 16 miles main line at $6170 | $ 98,720 | 00 |
| 9 miles branch line at $4500 | 40,500 | 00 |
| 2½ miles switches at $2500 | 5,000 | 00 |
| Lot and buildings at New Iberia | 2,200 | 00 |
| Other appurtenances | 1,000 | 00 |
| Lot and buildings at Jeanerette | 2,200 | 00 |
| Other appurtenances | 1,000 | 00 |
| Three section houses at $200 | 600 | 00 |
| Balance other improvements and paraphernalia | 1,500 | 00 |
| Total valuation | $152,720 | 00 |

The assessment under consideration was made under and in pursuance of the provisions of Act 107 of 1884, and for the year 1886. The plaintiff company is an incorporated institution, established under the laws of this State, and has its domicile here; and the law under which the complained of assessment was made, makes special provision for the assessment of railroad property and the supervision thereof by a board of reviewers.

The amount of the tax demanded is $3,444 80 for the State and parish, exclusive of that due the cities of New Iberia and Jeanerette.

### I.

The principal controversy in this case is with regard to the mode in which the value of this class of property, for the purposes of assessment, is to be ascertained. The contention of the plaintiff's counsel is that railroad property, like that of the Cotton Exchange in this city, is exceptional in character, and that an assessment of it should be predicated on the *price of investment*, less its depreciation in value since its construction, and not upon the rental value of the property, or its capacity for producing revenue, or income; or of making returns upon the investment.

The defendant's counsel, on the other hand, argues that a variety of elements enter into the " actual cash value " of such property — such as

prime cost of construction; capacity for earning dividends; terminal facilities; market value of shares of stock or bonds; capacity for transportation of freight and passengers; the length and number of its sidings; the character of the country that it traverses; indeed, everything that is calculated to make it profitable to those operating it, or valuable in the event of sale.

The "actual cash value" of property is the constitutional basis of its taxation.   State ex rel. Johnson vs. Tax Collector, 39 Ann. 536.

Constitution Article 203, provides that all "property shall be taxed in proportion to its value, to be ascertained as directed by law; *provided* the assessment of all property shall never exceed the actual cash value thereof."

Section 20 of Act 98 of 1886, provides that "all real estate and personal property        *        *        shall be estimated by the assessors    *    * at its actual cash value, etc."

Paragraph 6 of Section 93 of that act declares that the term "actual cash value, or actual cash valuation shall be held to mean a *price* that any piece of real estate, or personal or movable property would *sell for cash,* in the ordinary course of business, free of all encumbrances, *otherwise than by forced sale.*

The assessor has the right to require any property holder to produce his books for his examination, in order that he may *estimate* the value of the property to be assessed.

He may also interrogate on oath the property owner, his agents and employees, in order "to elicit from them the actual cash value of the property." *Ibid.* Sec. 21.

In making an assessment of lands and lots, it is made the duty of the assessor to "take into consideration the *enhanced value* of the same, arising from the buildings and improvements, such as barns, cribs, sugar mills, rice mills, gin houses, cabins and machinery." *Ibid.* Sec. 16.

In Railroad Company vs. Sheriff, 38 Ann. 760, we had under consideration quite a similar controversy.   The assessment of the Vicksburg, Shreveport and Pacific Railroad, then in contestation, included twenty miles of track, lands, depots and other property in the city of Shreveport; and the railroad bridge, that spanned Red river, which was included in the road-bed.   The total assessment of the main track was $170,000, or $8,500 per mile—including the bridge, the construction of which cost $300,000.

The contention of the company there was that this valuation was far in excess of the true value of their property, which it fixed at $4,000 per mile.

In that case we expressed the opinion that this bridge had increased the value of the whole length of the road within that parish, and that the board of assessors properly considered it a factor in fixing the general value of the track.

We said: "It sometimes happens that a railroad is more valuable in one parish than another, or more valuable in one than another part of the same parish. A great many circumstances go to produce this irregularity of value. It may be better constructed, or more recently repaired, or traverse a more populous and productive country, or terminate in a thriving town, or have better stations, or terminal facilities at one point than at another. In fact, a great number of circumstances might be cited as giving a local value to a road greater at one point along its line than at others in the same parish. The taxing authorities in every parish must take these things into consideration, in fixing values, for the obvious reason that *they are elements of value*, and their duty under the law, is to assess this value in the parish."

We are cited to our opinion in New Orleans Cotton Exchange vs. Board of Assessors, 37 Ann. 423, as confirmatory of plaintiff's theory that the *price of investment* is the true criterion of value in assessment proceedings.

In that case the standard of value sought to be established was the rental, or income of the property assessed, multiplied by ten.

The court held that whatever might be said of this standard of value, in respect " to the general class of *ordinary* property    *    *    which is susceptible of bringing revenue, it cannot be applied to *exceptional* property, beyond its purport, which is not designed to yield a rental, or income    *    *    In *such* cases, the correct rule would seem to be, to assess at the *price invested*, where the purchase, or improvement is of recent date, and it is not shown that the property has deterioated in value, etc."

The plaintiff's counsel presses the argument that a railroad is also *exceptional* property, and not built for barter and sale ; that it is simply an investment, and the cost of construction is a fair standard of its value.

In our opinion, a railroad is *not* exceptional property. It is not localized, or used for the gratification and enjoyment of its projectors, like the Cotton Exchange. Railroads are constructed for the express purpose of being operated for a profit. They are frequently disposed of at public and private sales. They are frequently mortgaged to secure bonds that are flooded in the money centres of the country. They are usually operated and controled by corporations and syndicates; and

shares of their stock are daily bought and sold in market overt.    These sales of stocks and bonds are recognized standards of value for such properties.

The evidence in this record shows that Mr. Huntingdon purchased 50,000 shares of Morgan stock at $150 00 per share—par value being $100 00 per share—a total expenditure of $7,500,000 for the whole.

It shows further that the *net* earnings of the plaintiff's company, for the year in which the assessment was made, are *admitted* to have been $61,360; and that there is plausibility in the contention of defendant's counsel, that they were $361,360.

The character of the property, its uses and profits, as well as the vast sum invested, clearly demonstrates that it is not exceptional, in the sense that the Cotton Exchange is.

It is true that Judge Burroughs announces the rule to be "that the assessment being the *value* of the land, looking to all the circumstances of its surroundings, or what may be recognized as the *cash market value*, the *income is not the proper criterion in ascertaining* its value." Burroughs on Taxation, pp. 227, 228.

And another learned author says: "A common method of raising revenue has been to levy annual taxes on the *value* of all real and personal property of the inhabitants, with limited exceptions, and *irrespective of the income* which    *    *    may be realized. This seems, at first view, to be *just*, and in the belief that it *is* just, it has been steadily adhered to, notwithstanding the many and serious difficulties attending it." Cooley on Taxation, p. 26.

Yet the revenues or income of a railroad may be considered as a factor in ascertaining its value, though it cannot be accepted as a *criterion.*

It has been held that the value of the bonds and stocks of a railroad corporation are among the truest *criteria* of the value of the road itself.

In treating of "the fair cash value" of the tangible property of a railroad corporation that was assessed under a statute of Illinois, quite similar to our own, the Supreme Court says: "It may be assessed for all practical purposes—and it is, perhaps, absolutely true—that every railroad company in Illinois has a bonded indebtedness secured by one or more mortgages. The parties who deal in such bonds are generally keen, far-sighted men, and most careful in their investments. Hence the value which these securities hold in the market is *one* of the truest *criteria*, as far as it goes, of *the value of the road*, as a security for the payment of those bonds.    *    *    *    *    *

"It is, therefore, obvious, that, when you have ascertained the *current*

*cash value* of the whole of the funded debt; and the *current cash value* of the entire number of shares, you have, by the action of those who, above all others, can best estimate it, ascertained the true value of the road, all its property, all its capital stock and its franchises." 92 U. S. 604, State Railroad Tax Cases.

In that case the State Board of Equalization assessed the tangible property of an *insolvent* railroad corporation at $2,500,000, notwithstanding it was, at the time, paying but little beyond its running expenses. The court say: " Concede for the present that the capital stock is sunk, and of no value; concede that the funded debt of the company has, at present, no value, or is unsaleable—there yet remains what is valued as worth over $2,000,000 of real and personal property, which, like all other property of individuals, or corporations, *ought to pay* its proportion of the public burdens." P. 606.

It thus appears that although the value of railroad securities in market is reckoned among the truest *criteria* of the value of the railroad, it does not hold good when the corporation becomes insolvent and its shares of stock are below par, and unsaleable. This illustration shows the variability of the standard of value of this class of property. Neither the cost of construction, nor its capacity for yielding returns upon the amount of investment, is a fixed criterion of valuation.

After having carefully re-examined the whole field of enquiry in this important matter, we can but reiterate with approval the language employed in the concurring opinion, in Cotton Exchange vs. Board of Assessors, viz. :

" There exists in fact no rigid rule for the valuation of property, which is affected by a multitude of circumstances which no rule can foresee, or provide for. The assessor must consider all these circumstances and elements of value, and must exercise a prudent discretion in reaching a conclusion." 37 Ann. 423.

## II.

We are, therefore, of the opinion that the district judge erred in fixing the valuation of plaintiff's property on the basis of " the cost of construction, including labor and material;" and in giving no material weight, or consideration to the evidence adduced in regard to the net revenues and earnings of the road.

We are likewise of the opinion that he was in error in treating the railroad, extending from Lafayette to New Orleans, as one piece of property, every portion of which is, for the purpose of assessment, *merged into*

*one whole.* No isolated, or particular portion of which can be accurately valued.

In Railroad Company vs. Sheriff we said: "The assessors * * has nothing to do with the valuation put upon railroads in other parishes, nor can he regulate his valuation by an average of the several valuations of the different parishes, or by an approximation based upon the general value the road, as an entirety. 38 Ann. 761.

This can be done only by a State board of equalization, which the Legislature has not seen proper to create. 39 Ann. 536, State ex rel. Johnson vs. Tax Collector.

Under our peculiar system, that portion or segment of a railroad situated within a particular parish is, *quoad* its assessment, segregated from the trunk, and valued as a whole. The exact provision of our revenue law on the subject is "that the real estate, road-beds, roads, iron, tracks, superstructures, excavations and channels of railroads, canals, etc., * * shall be assessed and taxed *in the parish where located;* and all other property * * belonging to said railroads shall be assessed and taxed at the domicile, or principal office of said railroads." Sec. 30, Act 98 of 1886; Act of 1884. Hence the incorrectness of the rule adopted by the judge *a quo.*

### III.

A vast amount of testimony was adduced in the court below, in favor of the respective contentions of the parties. The plaintiff's counsel seems to have taken especial pains to show the want of evidence before the defendant board, to justify the conclusion they came to, and to overthrow the presumption of correctness that the law raises in behalf of their decision, and with partial success. While it may be true, that they did not look into the *minutiæ* as critically as a court of justice would; and did not possess themselves of all the information that was furnished the district judge—their decision is entitled to full weight and due consideration.

The plaintiffs' calculation, based on the cost of construction, gives as the value of the main track, per mile, $6150, less 25 *per centum* for deterioration—net $4862 50 per mile; and $4125 per mile for short line, less 25 per cent.—net $3095 75 per mile. The defendant's calculation' predicated upon net revenues, tested by the cost of construction is placed at $7337 75 per mile. This, his counsel arrives at by taking into consideration the value of some sidings, and sawmill branches, he claims to have been omitted from Mr. Kruttschnitt's calculations.

On the theory that the purchase of Morgan stock evidenced an *appreciation* of fifty per cent. he places the value of the road per mile at

$11,006 62.    Putting it upon the basis of Mr. Kruttschnitt's estimation, and adding fifty *per centum* thereto, it is worth $8264 per mile.   He argues that the evidence shows that the road has been kept in full and complete repair, is in good running order, and is fully equipped, and making money.    Of this there can be no reasonable doubt.    The statement is made by Mr. Hutchinson in his evidence, that there were expended in 1886 the sum of $46,693 in betterments ; and that the sum of $258,418 was withdrawn from the earnings of the road, and applied to the discharge of interest on a debt due by the Houston and Texas Central Railroad.

Discarding these different theories, and adopting one consonant with the evidence and the legal principles herein announced, we are of the opinion that $6500 per mile, for sixteen miles of main track, outside of the cities of New Iberia and Jeanerette,  is a just estimate of the *actual cash value* of the road ; and that $5000 per mile for the nine miles of branch line to the Avery salt works is, likewise a just estimate of its cash value.    There is perhaps not this difference in the *cost* of *construction* of the two, yet, taking into consideration, as we have, *all* the elements of value, there is this difference between them.

The one mile of main track, within the city of New Iberia, and the one mile within the city of Jeanerette  are likewise fixed at  $6500 each per mile.

While, possibly, there may be some inaccuracies in the assessment, in other respects, and some others in the judgment appealed from, we prefer to maintain that of the board of reviewers as herein modified, for the reason that it is not shown by the evidence to have been  otherwise erroneous, and this burthen was on the plaintiff.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed ; and it is now ordered, adjudged and decreed, that the assessment of the sixteen miles of main track outside of the  cities of New Iberia and Jeanerette, be · and is hereby fixed at $6500 per mile ; that, that of the  nine miles of branch track be fixed at $5000 per mile; and that, that of the  one mile of main track within each of the cities of New Iberia and Jeanerette be  fixed at $6500 per mile.

It is further ordered, adjudged and decreed that, in all other respects, the assessment, as revised by the defendant board be, and is hereby maintained ; and that the cost of appeal be taxed against  the plaintiff and appellee.