CHICAGO & N. W. RY. CO. v. EVELAND et al., Tax Commission of South Dakota.

(Circuit Court of Appeals, Eighth Circuit. May 28, 1926.)

No. 7046.

1. Taxation ⟜390(2).

Assessment by state of property of railroad should be based on fair value of railroad's property in state, used or usable for operation of its lines in that state.

2. Taxation ⟜390(2)—Net earnings and current market value of railroad stocks and bonds for reasonable period before assessment are most reliable evidence of value for taxation purposes.

Net earnings of railroad and current market value of its stocks and bonds for reasonable period before making assessment are most reliable and influential evidence of value of its property for taxation purposes, far more so than cost or reproduction cost of property.

3. Taxation ⟜611(6).

Evidence held to show that value of railroad property assessed by state tax commission

under Rev. Code S. D. 1919, §§ 6596–6601, was grossly excessive.

4. Taxation ⟜144—Interstate railroad's cash on hand, accounts receivable, and materials and supplies held not taxable by state as part of railroad property within state (Rev. Code S. D. 1919, § 6600).

Interstate railroad's cash on hand, balances due from agents and conductors, miscellaneous accounts receivable, and materials and supplies were not taxable by state as part of railroad property in that state, where evidence did not show that such property added to value of road and rights exercised in state, and in absence of evidence as to amount of such property in state, or used incidentally to operate and maintain its lines therein, within Rev. Code S. D. 1919, § 6600.

5. Taxation ⟜144—That railroad paid dividends and greatly increased its surplus held no basis for state tax on its property within state, in absence of evidence that any part thereof was derived from transportation revenues in state.

That interstate railroad paid dividends for many years, and increased its surplus over $20,-000,000 in six-year period, held no basis for state tax on its property, in absence of convincing evidence that substantial part thereof was derived from net transportation revenues of its property in state, used and usable for railroad purposes.

6. Taxation ⟜608(5).

Systematic and persistent overvaluation of railroad's property for tax purposes entitles railroad to equitable relief, regardless of lack of evil intent by state tax commission.

7. Taxation ⟜319(2)—In absence of evidence, there is presumption that property, other than railroad's, which was overvalued for taxation purposes, was assessed at its fair and full value, and that railroad bore more than its fair proportion of tax burden (Rev. Code S. D. 1919, §§ 6596–6601, 6700).

Where property of railroad was overvalued for purposes of taxation, under Rev. Code S. D. 1919, §§ 6596–6601, there was presumption, under section 6700, in absence of contrary evidence, that other property, which was assessed by different assessors or boards, was assessed at its fair full value, and that railroad therefore bore more than its fair proportion of tax burden.

8. Taxation ⟜40(8)—If one of several state assessing boards intentionally and uniformly overvalues certain classes of property, and other boards assess property at fair value, whole assessment is fraud on overassessed property.

Where different state assessors and boards value different classes of property for taxation, if any board intentionally and uniformly overvalues certain classes of property, assessment by other boards of other property at fair value, though complying with law, makes whole assessment a fraud on overassessed property, notwithstanding board assessing complainant's property was wholly free from fault of fraud or intentional discrimination.

**9. Equity ⊜⟶3.**

Systematic, repeated, and continuing violations of Constitution or law, to complainant's injury, present ample ground for equitable relief.

Munger, District Judge, dissenting.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by the Chicago & Northwestern Railway Company against H. L. Eveland and others, constituting the Tax Commission of the State of South Dakota, and others. Decree for defendants, and plaintiff appeals. Reversed and remanded, with directions.

See, also, 285 F. 425.

A. K. Gardner, of Huron, S. D., and Samuel H. Cady, of Chicago, Ill., for appellant.

Byron S. Payne, of Pierre, S. D. (Buell F. Jones, Atty. Gen., of South Dakota, on the brief), for appellees.

Before SANBORN, Circuit Judge, and MUNGER and JOHNSON, District Judges.

SANBORN, Circuit Judge. The property of a railway company in the state of South Dakota, used and usable in the operation of its lines in that state, is required by its statutes to be assessed for taxation by its state tax commission as of the preceding May 1st on July 7th in each year. The railway company is required to furnish to the tax commission a statement of the amount and value of its property in that state of the character described as of the preceding December 31st. The tax commission is required to give the railway company 10 days' notice of its proposed assessment and a hearing regarding all matters relating to the correctness thereof. Revised Code of South Dakota 1919, §§ 6596–6601. The Chicago & Northwestern Railway Company furnished the tax commission its verified statement of the value of its property in that state, pursuant to the requirement of its statutes, as of December 31, 1921; the commission made an assessment based thereon, heard the railway company concerning that assessment, and finally fixed and assessed the value of its property for taxation in 1922, here in controversy, at $41,-690,298, equivalent to $33,882 per mile.

Thereafter the railway company brought this suit against the members of the state tax commission and the auditors and treasurers of certain counties in the state for an injunction to prevent the collection of the taxes against its property on the basis of this assessment, on the ground that the assessment was excessive; that it was more than 40 per cent. above the fair value of its property in South Dakota and was on a basis far above that on which the assessment of other property in the state of similar value was made; that the collection of the taxes levied on its property upon this basis would constitute the taking of its property without due process of law, in violation of the Constitution of the United States; that the members of the tax commission in making the assessment had disregarded established rules of evidence and of law and the actual value of the property, and had arbitrarily and willfully made the assessment far in excess of the true value of the property. In its complaint the railway company made proper allegations in support of this claim, and the defendants in their answer denied the material averments of the plaintiff, and alleged that the assessment was the fair value of the property made by the commission in good faith. The case went to final hearing in the court below on the evidence produced by the respective parties, and it resulted in an opinion and a decree in favor of the defendants.

[1, 2] The assessment should have been the fair value of the property of the plaintiff in South Dakota, used and usable for the operation of its railroad lines in that state. In determining the value of the property of a railway company for the purposes of taxation, several classes of evidence are admissible; but the net earnings of the property and the market value of its stocks and bonds for a reasonable period antecedent to the making of the assessment constitute the most reliable and influential evidence of that value.

[3] The amount of the assessment challenged was $41,690,298, or $33,882 per mile. The plaintiff insisted that the fair value of the property assessed did not exceed $22,000,000. Mr. C. F. Balsch was the statistician of the plaintiff. He testified that the nature of his work and his entire experience for 18 years had been in railroad accounting and valuation; that he was familiar with the methods of accounting practiced and approved by railway companies and the Interstate Commerce Commission, with the accounts and books of the plaintiff, and with the just and approved method of apportioning earnings, expenses of operation, and values of railroad property to the parts of it in different states and sections; and that he had prepared schedules and exhibits, which were introduced in evidence before the tax commission in its hearing upon the assessment of the plaintiff's property in South Dakota in 1922, which were correct, were made by the use of just and approved methods, and, in his opinion,

truthfully represented the facts they disclosed. By these schedules and exhibits, and the testimony of Mr. Balsch and other witnesses, the plaintiff introduced substantial evidence of these facts. The number of miles of railroad operated by the plaintiff during the years 1917, 1918, 1919, 1920 and 1921, was about 8,000; the number of miles operated by it in South Dakota varied from 1,063.15 in 1917 to 1,230.45 in 1921. The value of the entire line of the plaintiff in the nine states in which it operated, as represented by the par value of its stocks and bonds in 1921, was $406,063,100; the average value of it as thus represented during the five years 1917, 1918, 1919, 1920 and 1921, was $387,556,920, and its average par value per mile was $47,171. The average market value of its stocks and bonds during the years 1917, 1918, 1919, 1920, and 1921 was $348,125,629, and its average market value per mile as thus represented was $42,423.

The operated lines of the plaintiff in South Dakota were of much less value per mile than the average value per mile of the entire system. They lie in a sparsely settled portion of the country, without large cities. In Chicago the plaintiff has elevated tracks worth millions of dollars, one of the largest elevators in the world, 340 acres of very valuable land covered with shops, 500 miles of railroad and a terminal representing an investment of about $25,000,000. It has four tracks from Chicago to Milwaukee; a double track across Iowa from Council Bluffs to Clinton. In Wisconsin it has ore docks representing an investment of more than $5,000,000, and it has a double track from Chicago to Elroy, Wis. In Michigan it has extensive ore docks. The value per mile of the tracks, bridges, railway stations and other equipment in other states is much greater than is the value of the tracks, bridges, railway stations and equipment it owns in South Dakota. There are no such valuable parts of the plaintiff's railway system in South Dakota as these it owns in the other states. Mr. Balsch testified that in his opinion the part of the plaintiff's operated railway property in South Dakota was hardly worth one-half the value per mile of that without the state, and it does not seem probable that, if the average value per mile of the entire lines of the railroad was $42,-423, as indicated by the market value of its stocks and bonds for the five years 1917, 1918, 1919, 1920, and 1921, that the value of that part of it in South Dakota in 1921 and 1922 could have been more than $22,000 to $25,-000 per mile. Wallace v. Hines, 253 U. S. 66, 69, 40 S. Ct. 435, 64 L. Ed. 782.

By the schedules verified by Mr. Balsch and his testimony, the plaintiff showed the value of the part of its railroad property in South Dakota, as represented by the par value of its stocks and bonds and by the market value of its stocks and bonds, by apportioning to the state of South Dakota the latter's share of those values, first, on the basis of the company's railway operating revenues, and, second, on the basis of its transportation train miles. Mr. Balsch assigned to the state of South Dakota all such revenues that arose from the traffic moving on the plaintiff's lines from one point in South Dakota to any other point in that state and a mileage proportion of the revenues derived from freight shipments and passengers from traffic originating in South Dakota and terminating in other states and from that originating in other states and terminating in South Dakota. He testified that this method was that in use by the plaintiff in assigning its revenues to different states, was an approved method and one required to be practiced by the statutes of the state of Minnesota, and that thus apportioned the plaintiff's railway operating revenues from the state of South Dakota were 4.56 per cent. of its operating revenues from its entire lines in 1921; that on that basis the value of its operative railroad property in the state of South Dakota in 1921, as represented by the par value of its stocks and bonds, was $18,516,477; and that its average value as thus represented for the five years 1917, 1918, 1919, 1920, and 1921, was $16,390,568.

He testified that the passenger train miles, plus the freight train miles, plus the mixed train miles of traffic assignable to the plaintiff's property in South Dakota constituted 6.90 per cent. of the transportation train miles of the entire railway system in 1921, and on that basis that the value of the plaintiff's railroad property in South Dakota, as represented by the market value of its stocks and bonds, was $22,058,387 in 1921, and that the average value of that property as thus represented for the five years, 1917, 1918, 1919, 1920, and 1921, was $23,047,148. Mr. Balsch testified and introduced schedules showing that the plaintiff derived no net revenue from its operative railroad property in South Dakota in 1921, 1920, 1919, 1918, or 1917, but suffered a net loss therefrom in each year.

Mr. C. T. Dike, who testified that he was the engineer of maintenance of the plaintiff, had been such for 25 years and was familiar

with its lines in South Dakota, and the physical condition and value of them, and Mr. George W. Hand, a civil engineer who had had 20 years' experience in valuation work with the plaintiff, testified on its call at length to the physical condition and value of plaintiff's property in South Dakota assessable and that in their opinion it was worth $29,000,000. No reference to the gross or net earnings of that property appears in the testimony of either of them. The defendants called as a witness Mr. Ross Miller, an engineer of the South Dakota Board of Railroad Commissioners, who testified that he had held that position about 7½ years and that he had been employed in construction and valuation work for many years before; that he calculated and made a computation of the value of the railroad property of the plaintiff based on its report to the South Dakota Railroad Commissioners for the year 1921 and its report to the Interstate Commerce Commission on May 8, 1921, and that he found the physical valuation of the plaintiff's property on the basis of reproduction new to be $45,281,926, and its depreciated value at the end of the year 1921, $36,451,450; and that the plaintiff claimed when the report of the Interstate Commission was made that its property was undervalued $6,651,550. But these valuations were not for the purposes of taxation, wherein use for railroad purposes and market value of stocks and bonds are chief factors, but for rate-making purposes, wherein a very different basis for valuation prevails. The defendants proved by Mr. Balsch that the plaintiff had paid dividends on its stock for 25 years prior to 1921 and paid a dividend of 7 per cent. on its stock in that year.

Mr. R. L. Bitney, called by the defendants, testified that he was the statistician for the Board of Railroad and Warehouse Commissioners of Minnesota; that for eight previous years he had been the statistician for the Board of Railroad Commissioners of the state of South Dakota; that the plaintiff apportions operating revenues to states on a mileage basis on interstate shipments; that this method does not apportion to South Dakota its proper share of revenues; that 85 per cent. of the total freight revenues assigned to South Dakota is received from the apportionment of interstate revenues; that the rates in South Dakota are considerably higher than in the surrounding states and the mileage prorate of the through rate takes no account of this fact and that it is more expensive to assemble traffic on the branches the plaintiff operates in South Dakota than in the

other states through which its lines extend; that he had made a study of this subject and had prepared his Exhibit 9, which portrayed the apportionment of gross revenues to the plaintiff's property in South Dakota in 1921, which he thought just, and that if that system were adopted it would increase the revenues apportioned to the South Dakota property, for the year 1921, $1,069,414; that in his opinion too large a share of operating expenses were apportioned to the plaintiff's property in South Dakota by the plaintiff and by Mr. Balsch; that they apportioned steam locomotive repairs, depreciation, and retirements on the basis of locomotive miles, and he would apportion them on the basis of locomotive ton miles; that if his system were adopted it would reduce the operating expenses apportioned to the plaintiff's operative railroad property $598,594.46, or about 30 per cent. On cross-examination, Mr. Bitney testified:

"Q. Mr. Bitney, in your computations here, pertaining to Exhibit 9 in the apportionment of the gross revenues to South Dakota, have you adopted a formula or system or plan which is in use in any other place in any other state? A. No, the system in general use throughout the United States is mileage prorate."

He further testified that he did not know of his plan being used in any other place or at any other time by any railway company, for the reason that it would call for a complicated computation, except in a rate case where the matter is set up in this manner; that he knew the system in Minnesota; that the companies in that state make the same apportionment of interstate revenues in Minnesota as in other states; and that in that state such apportionment was pursuant to statutory requirements. Mr. Balsch was recalled and testified in effect that in his opinion the adoption of the system proposed by Mr. Bitney would be unjust to the property of the plaintiff in other states and impractical. There were many schedules and exhibits and much testimony in this case which has not been recited, but none which requires a different decision from that which that already referred to compels.

In view of the fact that the schedules, exhibits and statements of Mr. Balsch rest on a system of apportioned valuation and treatment generally used and approved by the railroad companies of the nation and required by some of the states, while that of Mr. Bitney is new and awaiting experiment, and after a deliberate consideration of their testimony and the other evidence, we are con-

vinced that the valuation for the purposes of taxation of the railroad property of the plaintiff in South Dakota assessable by its tax commission in 1922, evidenced by the testimony, schedules and exhibits of Mr. Balsch, more nearly evidences the fair value of that property in 1921 and 1922 than do those of Mr. Bitney.

Counsel for the defendants in their brief and argument present these considerations:

First. In Schedule A of its statement and return of December 31, 1921, the plaintiff stated the total value of its property in South Dakota to be $47,528,900. But it also stated on that schedule that "the valuations shown in this schedule are based on the estimated cost of reproduction new of the physical property of the company in South Dakota, making no deductions for depreciation and without reference to the market value of such property or the market value of the stocks and bonds of the company or the present earnings of the company on its said properties or of the present or future earning capacity or possibilities of such properties. It is not claimed that the valuations stated in this schedule represent the fair cash value of the property for purposes of taxation, but such value as to the system is more clearly and fairly represented by the figures contained in Schedule K, opposite the item 'Cash Value of all Operating Properties in System,' and as to the property of the Chicago & Northwestern in South Dakota, as shown in Balsch's exhibits attached at close of this report, and made a part hereof." These Balsch exhibits are the same exhibits that were in evidence in the court below, from which some of the evidence for the plaintiff which has been recited has been derived.

Second. According to the report of the Board of Railroad Commissioners of South Dakota the plaintiff carried on its books the cost of its physical properties in South Dakota at over $52,467,000. But this was cost, not value.

Third. The engineers of the Interstate Commerce Commission estimated the value of the plaintiff's property in South Dakota in 1922, based on prices and cost of construction in 1914, at about $35,500,000, and the plaintiff claimed $6,651,000 more. But those valuations were based on prices and costs—not on value for taxation or sale.

[4] Fourth. At the end of the year 1921 the plaintiff had on hand $22,240,000 in cash, $2,500,000 balances due from agents and conductors, $4,500,000 of miscellaneous accounts receivable, and materials and supplies worth over $12,000,000. But this property was not assessable by the tax commission of South Dakota as a part of the property of the plaintiff in that state, (1) because it cannot be seen from the evidence in any "plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the state" (Wallace v. Hines, 253 U. S. 66, 67, 69, 40 S. Ct. 435, 64 L. Ed. 782) ; (2) because, if a part of the current cash and bills receivable of the company were to be credited to that state, only a part of the current balance thereof above the current bills payable of the company should be so credited, and there is no evidence of the amount of the latter; and (3) because there is no evidence what, if any, part of the cash and bills receivable were within the state of South Dakota, or were "used in and employed about and incidental to the actual and necessary operation and maintenance of" the railroads of the plaintiff and the branches thereof in the state. Revised Code of South Dakota, § 6600.

[5] Fifth. The plaintiff paid a dividend on its stock in 1922 and in many preceding years, and increased its surplus between 1915 and 1921 more than $20,000,000. But there was no convincing evidence that any substantial part of the dividends paid in any of the years between 1915 and 1922, or of the increase of the surplus, was derived from the net transportation revenues of the plaintiff's property in South Dakota, used and usable for railroad purposes.

So it is that in our opinion the preponderant and convincing weight of the evidence in this case establishes that (1) the original cost and the cost of reproduction new without depreciation or other considerations in 1921 and 1922 of the railroad property of the plaintiff in the state of South Dakota assessable by its tax commission was about $50,000,000; (2) that the value of that property apportioned to it as represented by the par value of the stocks and bonds of the plaintiff on the basis of the railway operating revenues derived from it in comparison with the railway operating revenues derived from the entire property of the plaintiff of that character was about $18,516,477 in 1921, and the average value thereof on that basis in the five years, 1917, 1918, 1919, 1920, and 1921, was about $16,390,568; (3) that the value of that property apportioned to it as represented by the market value of the stocks and bonds of the plaintiff on the basis of the railway operating revenues derived from it in comparison with the railway operating revenues derived from the entire property of the plaintiff of that character was about $14,577,717 in 1921, and that the average value of that

property on like bases in the five years, 1917, 1918, 1919, 1920, and 1921, was $14,638,570; (4) that this railroad property in South Dakota lies in a sparsely settled region and its value per mile is much less, probably not more than two-thirds of the value per mile of the part of the plaintiff's railroad property of this character in the other states in which it lies; (5) that the plaintiff derived no substantial net revenues from this property in South Dakota in either of the years 1917, 1918, 1919, 1920, or 1921.

In determining the value of the property of a railway company "used in and employed about and incidental to the actual and necessary operation and maintenance of such railroads and branches thereof" (Revised Code of South Dakota, § 6600), many classes of evidence are competent, but (1) the value of the use of such property in the operation of its railroads and its net revenue from such use, and (2) the current market value of its stocks and bonds are among the most persuasive and authoritative—far more so than the cost of the property or the cost of its reproduction new in cases in which the property is in operation and has been for many years. Cleveland, etc., Ry. Co. v. Backus, 154 U. S. 439, 445, 14 S. Ct. 1122, 38 L. Ed. 1041; Cincinnati Ry. Co. v. Guenther (C. C.) 19 F. 395, 400; State v. Illinois Central R. Co., 27 Ill. 64, 79 Am. Dec. 396; Morgan's L. & T. R. & S. Co. v. Board of Reviewers, 41 La. Ann. 1156, 3 So. 507, 509; State v. Nevada Central Ry. Co., 28 Nev. 186, 81 P. 99, 102, 113 Am. St. Rep. 834; Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 221, 222, 17 S. Ct. 604, 41 L. Ed. 965; State Railroad Tax Cases, 92 U. S. 575, 605, 23 L. Ed. 663; Atchison, T. & S. F. Ry. Co. v. Sullivan, 173 F. 456, 466, 97 C. C. A. 1.

In Cleveland, etc., Ry. Co. v. Backus, 154 U. S. 439, 445, 14 S. Ct. 1122, 1124 (38 L. Ed. 1041), Mr. Justice Brewer, delivering the opinion of the Supreme Court, said:

"The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of the property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon

something which is created by the uses to which it is put."

In Cincinnati Southern Ry. Co. v. Guenther (C. C.) 19 F. 395, 400, Judge Key well said:

"A railroad that costs $20,000 per mile is worth as much as one that costs $50,000 per mile, if its business and net earnings be as great or greater. Indeed, it is more valuable, in one sense, as it makes a better return on the investment."

In State v. Illinois Central R. Co., 27 Ill. 64, 67 (79 Am. Dec. 396), the Supreme Court of that state said:

"Where property has a known and determinate value, ascertained by commerce in it, as in most kinds of personal property, or fixed by law, as money, there can be no difficulty. But there are many kinds of property as to which the assessor has no such satisfactory guide. Such is peculiarly the case with railroad property, and other similar property, constructed, not only for the profit of the owners, but for the accommodation of the public, under the sanction and by the exercise of the sovereign power of the state. * * * In such cases, if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is discovered, and that is its net profits. When property is thus improved, it is manifest that it is more or less valuable, as it yields a greater or less profit, in its product and economical use."

In Morgan's L. & T. R. & S. S. Co. v. Board of Reviewers, 41 La. Ann. 1156, 3 So. 507, 511, the Supreme Court of Louisiana reversed the court below, because it was of the opinion that "the district judge erred in fixing the valuation of the plaintiff's property on the basis of 'the cost of construction, including labor and material,' and giving no material weight or consideration to the evidence adduced in regard to the net revenues and earnings of the road."

In State v. Nevada Central R. Co., 28 Nev. 186, 81 P. 99, 102, 113 Am. St. Rep. 834, discussing the relative weight of cost and net income in ascertaining the taxable value of the property of a railroad corporation, the Supreme Court of Nevada declared that, following decisions in other states, it long ago laid down the rule that the cash value of a railroad for the purposes of taxation "must be determined mainly by its net earnings, capitalized at the current rate of interest, taking into consideration any immediate

prospect of an increase or decrease in its earning capacity."

We turn to a consideration of the weight of the current market value of the stocks and bonds of the used and usable railroad property of an operating railway company as evidence of the value of that property.

In Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 221, 222, 17 S. Ct. 604, 606 (41 L. Ed. 965), Mr. Justice Brewer, delivering the opinion of the Supreme Court and discussing the evidence of the value of the property of the Express Company for the purposes of taxation, said:

"According to the return filed by it with the auditor of the state of Ohio, as shown in the records of these cases, its number of shares was 120,000, the market value of each $140 to $150. Taking the smaller sum, gives the value of the company's property taken as an entirety as $16,800,000. * *. * The value which property bears in the market, the amount for which its stock can be bought and sold, is the real value. Business men do not pay cash for property in moonshine or dreamland. They buy and pay for that which is of value in its power to produce income, or for purposes of sale."

Mr. Justice Miller, in State Railroad Tax Cases, 92 U. S. 575, 605 (23 L. Ed. 663), discussing the weight of the evidence of the current market value of stocks and bonds of railroad companies in determining the taxable value of their property, said:

"It is therefore obvious that, when you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock."

There is no doubt that neither the net revenue of an operated railroad, nor the current market value of its stocks and bonds, nor any other class of competent evidence is the sole criterion by which the value of railroad property for purposes of taxation must be determined. But there are some classes of evidence upon this subject that under the established rules of law and evidence and in reason are entitled to far greater influence in determining such value than others. After a thoughtful reading and deliberate consideration of all the evidence regarding the fair value of the property of the plaintiff in South Dakota assessable by the defendant tax commission in the light of the established rules of law and evidence, to which reference has now been made, we are unable to resist the conclusion that the tax commission of South Dakota and the court below in their consideration of that evidence and in their finding of the value of the property of the plaintiff in South Dakota fell into a decisive error of law in that they failed to give to the fact that the plaintiff derived no substantial net earnings from this property in South Dakota in 1921, or in any of the four previous years, and to the market value of the stocks and bonds of the plaintiff, the decisive influence in determining the value of the property under consideration to which they were entitled.

[6] The evidence establishes the fact that the plaintiff presented to the tax commission similar objections, protests, schedules and testimony at the hearing before that commission on the assessment of the property in South Dakota of the plaintiff for 1921 and the seven previous years. The assessments for those years were as follows: 1914, $41,459,249; 1915, $41,796,850; 1916, $41,899,439; 1917, $41,945,624; 1918, $41,955,855; 1919, $41,960,113; 1920, $41,115,784; 1921, $41,956,406. This fact compels the conclusion that the overvaluation of the property of this railway company for purposes of taxation was not exceptional, but has been and is systematic, persistent, established, and that it threatens to be prolonged. Such an overvaluation, whereby the property of a complainant is made to bear an undue proportion of the burden of taxation, presents a good cause of action for relief from the payment of the unjust part of the tax. Nor is an evil intention of the members of the board which makes such persistent overvaluation to perpetrate such an injustice indispensable to the maintenance of a suit for relief in equity in such a case as that under consideration.

[7] The property of a railway company used and usable in the operation of its lines in South Dakota is required by its statutes to be assessed for taxation by the state tax commission. Revised Code of South Dakota 1919, §§ 6596–6601. The real estate and personal property of corporations other than railway companies and of individuals are required to be assessed by different assessors or boards, and section 6700 of the Code of South Dakota of 1919, requires that "all property shall be assessed at its true and full value in money." The legal presumption, in the absence of evidence on that subject, and there is none in this case, is that all property other than that of railway companies was assessed at its fair, full value. Instead of having all property subject to taxation in the state val-

ued by the same commission or board, different boards or assessors valued for taxation different classes of property pursuant to the statutes of that state.

In Taylor v. Louisville & N. R. Co., 88 F. 350, 374, 31 C. C. A. 537, 561, a case heard and decided by Judge Taft, now Chief Justice, Judge Lurton, subsequently Mr. Justice Lurton, and Judge Severens, Judge Taft, delivering the opinion of the court, said:

"The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully-assessed property. And this is true although the particular board assessing the complainant's property may have been wholly free from fault of fraud or intentional discrimination."

[8] By the same mark, if any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly overvaluing as in this case a certain class or classes of property, the assessment by other boards of other classes of property at their fair value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the overassessed property. And this is true, although the particular board assessing the complainant's property may have been wholly free from fault of fraud or intentional discrimination.

In Greene v. Louis. & Interurban R. Co., 244 U. S. 499, 518, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, the Supreme Court quoted and adopted this rule and declared that "the justice of this view has been recognized by the state courts of last resort in many cases," and cited 11 cases in support of its statement.

[9] Moreover, the systematic, repeated, continuing violations of the Constitution or the law, to the injury of a complainant, like a continuing trespass, constitute persuasive evidence of intention so to do, inflict upon the injured party the same damage that they would if they were intentional, and present ample ground for relief in equity. Atchison,

13 F.(2d)—29

T. & S. F. Ry. Co. v. Sullivan, 173 F. 456, 461, 97 C. C. A. 1; Wells Fargo & Co. v. Johnson, 214 F. 180, 189, 130 C. C. A. 528, L. R. A. 1916C, 522, and cases there cited; Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903; Raymond v. Chicago Traction Co., 207 U. S. 20, 36, 37, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757.

Before this case came to trial in the court below the plaintiff paid and the defendants received 70 per cent. of the amount of the tax for 1922 on the plaintiff's used and usable railroad property in South Dakota, and the court enjoined the defendants from the collection of the other 30 per cent. until the further order of the court. The valuation upon which the taxes of 1922 were based was $41,690,298. The plaintiff has therefore paid the taxes on that property upon a valuation of $29,183,208.60. The evidence in this case applied to the question of a fair valuation of the property of the plaintiff in South Dakota assessable by its tax commission in 1922, in accordance with the rules of law, evidence and reasons heretofore cited, has convinced that a fair valuation of that property for the purposes of taxation in that year would not exceed that amount.

It is accordingly ordered that the decree below be reversed, and that this case be remanded to the court below, with directions to render a decree for the plaintiff enjoining the defendants from collecting any more taxes upon the plaintiff's property in South Dakota, based upon the assessment here in controversy, and for its recovery of the costs of this suit.

MUNGER, District Judge (dissenting). To obtain the relief which the appellant sought, it was incumbent upon the appellant to show, not only that it was assessed at more than the true value of its property, but also that this assessment was fraudulently made, or was in pursuance of some fundamentally wrong theory. The principle is stated in Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 353, 38 S. Ct. 495, 62 L. Ed. 1154, as follows:

"It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party. Head Money Cases, 112 U. S. 580, 595 [5 S.

Ct. 247, 28 L. Ed. 798]; Pittsburgh, etc., Ry. Co. v. Backus, 154 U. S. 421, 435 [14 S. Ct. 1114, 38 L. Ed. 1031]; Maish v. Arizona, 164 U. S. 599, 611 [17 S. Ct. 193, 41 L. Ed. 567]; Adams Express Co. v. Ohio, 165 U. S. 194, 229 [17 S. Ct. 305, 41 L. Ed. 683]; New York State v. Barker, 179 U. S. 279, 284, 285 [21 S. Ct. 121, 45 L. Ed. 190]; Coulter v. Louisville & Nashville R. R. Co., 196 U. S. 599, 608 [25 S. Ct. 342, 49 L. Ed. 615]; Chicago, Burlington & Quincy Ry. Co. v. Babcock, 204 U. S. 585, 597 [27 S. Ct. 326, 51 L. Ed. 636]."

And it is restated in Chicago, G. W. Ry. v. Kendall, 266 U. S. 94, 98, 45 S. Ct. 55, 57 (69 L. Ed. 183). "It is not enough, in these cases, that the taxing officials have merely made a mistake. It is not enough that the court, if its judgment were properly invoked, would reach a different conclusion as to the taxes imposed. There must be clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice." Sioux City Bridge v. Dakota County, 260 U. S. 441, 447, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Southern Ry. Co. v. Watts, 260 U. S. 519, 526, 527, 43 S. Ct. 192, 67 L. Ed. 375.

The evidence does not disclose an intentional overvaluation of the appellant's property. There is no direct testimony as to the methods used by the tax commission in arriving at the amount of the assessment. On the hearing of this case in the court below appellant offered the testimony of witnesses in endeavoring to show the value of the railway property in South Dakota, but no testimony was offered to show that the tax commission was intentionally wrong in reaching its conclusions. There was testimony that some kind of a protest was made to the tax commission by the tax commissioner of appellant, in which he claimed that the proposed assessment was excessive. A witness for the appellant testified that he presented the tax commissioner with some statistical tables, which he claimed showed the value of the entire railway system, based upon the par and upon the market value of its stocks and bonds, and also based upon the amount of the rental paid by the United States for the use of the property in 1918, 1919, and 1920, when capitalized at the rate of 6 per cent. per annum, and also partly based upon an amount found as a tentative value of the railway by the Interstate Commerce Commission, in a proceeding known as Ex parte 74. From these bases the witness deduced values of the railway in South Dakota, by the use of three theories, which he called apportionments according to "gross railway operating revenues," "transportation train miles," and "use of property," and these figures were before the tax commission as part of the appellant's claim of the true basis for assessment. The tax commission was informed that the railway company claimed that it had operated its lines within the state at a loss for the five preceding years. The tax commission also had before it the annual report the appellant had made for the year 1921, purporting to show the appellant's estimates of its value in South Dakota.

The record does not show that appellant asked any express rulings on any deductions demanded from the tax commission, as it might have done (Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 594, 27 S. Ct. 326, 51 L. Ed. 636), in order to ascertain the theory or basis of the assessment. This evidence is insufficient to show any fraudulent or intentionally wrong action of the tax commission. It discloses merely a difference of judgment as to values between its conclusion and that of appellant. It is not revealed what sources of information were accessible to or were used by the tax commission in reaching its decision. The tax commissioners had the right to use their own judgment and knowledge. Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 596, 598, 27 S. Ct. 326, 51 L. Ed. 636. They also had the right to consider the fact that, while the appellant's statistician who appeared before them expressed the opinion, in the tables which he had prepared by the methods mentioned, that the total value of the railway in South Dakota was $19,387,337, and the value per mile was $17,014, the report which the appellant had made to the tax commission for the year ending December 31, 1921, showed an average value per mile in South Dakota of $38,707. It is true that a note attached to this report stated that this value was based on the estimated cost of reproduction new, making no deductions for depreciation. Only a portion of this report is shown in this record, and the date to which this estimated valuation was to apply is not shown, but there is testimony in this case that this valuation relates to a period about the year 1914. The tax commission had the right to infer that values in 1922 were generally higher than in 1914. Lincoln Gas Co. v. Lincoln, 250 U. S. 256, 268, 39 S. Ct. 454, 63 L. Ed. 968; Banton v. Belt Line Ry., 268 U. S. 413, 422, 45 S. Ct. 534, 69 L. Ed. 1020.

Appellant's witnesses in this case show that $8,800,000 worth of additions and betterments and of new railway acquired or con-

structed has been added since 1908, but the dates of these additions are not shown. One of appellant's witnesses testified on this trial that $10,000,000 should be deducted for depreciation. It does not appear whether the tax commission had the benefit of this testimony. The cost of reproduction new, as of the date of the valuation, is evidence that the tax commission had the right to consider. Standard Oil Co. v. So. Pacific Co., 268 U. S. 146, 156, 45 S. Ct. 465, 69 L. Ed. 890. The amount of depreciation, the amount of increase of value in 1922 over 1914, the value of the additions and of newly constructed or purchased lines would have been of service, if presented to the tax commission.

There was testimony on the trial of this case that the Interstate Commerce Commission had made a tentative appraisal of the value of appellant's property as of 1914 except as to land, and as of 1917 as to land, and found it to be the sum of $34,928,069, and that appellant had protested that this was an undervaluation in the sum of $6,651,550. There was also testimony that the appellant had made a report to the Board of Railway Commissioners of South Dakota as of the date of December 31, 1921, showing an investment by appellant in road and equipment in South Dakota of $52,460,211.63, and an average per mile of $42,634.98. It is not disclosed whether or not any of these reports were presented to the tax commission. There was other testimony given on behalf of both appellant and appellees, but it related only to the question of the proper value of the appellant's property.

The only method by which the appellant seeks to show a fraudulent or intentional overvaluation of its property is by showing that its computations of the value in South Dakota were not accepted by the tax commission. It is not shown that the commission did not have other sources of information, nor is it shown that they adopted any wrong method. The tax commission made its valuation for assessment pursuant to constitutional and statutory authority requiring it to act, and its decision is not to be overthrown merely by showing that it erred in its conclusion. "The general rule is well settled that, 'whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined.' Pittsburgh, Cincinnati,

etc., Railway v. Backus, 154 U. S. 434 [14 S. Ct. 1114, 38 L. Ed. 1031]; Western Union Telegraph Co. v. Taggart, 163 U. S. 1 [16 S. Ct. 1054, 41 L. Ed. 49]. Adams Express Co. v. Ohio, 165 U. S. 194, 229, 17 S. Ct. 305, 312 (41 L. Ed. 683).